18 So.3d 1103 (2009)
D.S., the Biological Father, In re the Matter of the Termination of Parental Rights for the Proposed Adoption of a Minor Child, Appellant,
v.
J.L., the Biological Mother and Miracles Adoption Agency, Inc., Appellees.
No. 1D09-1233.
District Court of Appeal of Florida, First District.
August 10, 2009.
Rehearing Denied September 18, 2009.
*1104 Robert H. McLean of Trow & Perry, Ocala, for Appellant.
Sharon H. Proctor, Lake Saint Louis, MO, Randi E. Dincher, Gainesville, Anne Raduns-Owen, Ocala, for Appellees.
LEWIS, J.
D.S. (Appellant) seeks review of a final order determining that his consent was not required for the adoption of his biological child and a companion order terminating his access to the child. Appellant argues that the trial court erred in determining that section 63.062(2)(b)2, Florida Statutes (2008), requires strict compliance to the extent that his timely filing of a notarized letter and subsequent filing of an affidavit were insufficient to meet the statutory obligation to file an affidavit within thirty days of service of a notice of intended adoption plan. He further argues that the trial court erred in construing section 63.062(3), Florida Statutes (2008), as imposing on him an obligation to file a verified response in addition to the affidavit required under section 63.062(2)(b)2. Finally, Appellant argues that section 63.062(2)(b)2 is unconstitutional as applied to him in this case. We agree with Appellant that the trial court erred in its interpretation of the requirements imposed on unmarried biological fathers under Chapter 63. Consequently, we do not reach the constitutional issue. See In re Holder, 945 So.2d 1130, 1133 (Fla.2006) (noting that the court will avoid considering a constitutional question when the case can be decided on nonconstitutional grounds); Singletary v. State, 322 So.2d 551, 552 (Fla.1975) (adhering to the "settled principle of constitutional *1105 law that courts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds."). Because the trial court improperly ruled, on summary judgment, that Appellant did not satisfy the affidavit requirement of section 63.062(2)(b)2, we reverse and remand for further proceedings consistent with this opinion.
The material facts of this case are undisputed. During her pregnancy, the mother of Appellant's child contacted Miracles Adoption Agency, Inc. (Appellee), seeking to have the child placed for adoption. The mother identified Appellant as the father, and Appellee sent Appellant a Notice of Intended Adoption Plan, which included the following notification: "If you wish to contest this adoption plan, you must file with the circuit court ... within 30 days after service of this notice, a verified response (affidavit) including a commitment to the child that complies with F.S. 63.062(2)(b)2." Appellant responded to the notice by a notarized letter dated July 14, 2008. The letter states, in pertinent part, as follows:
I have received a copy of the Notice of Intended Adoption Plan from your Agency regarding [the birth mother].
I am contesting this adoption plan. I am willing and intend to support my child in accordance with Florida State Law, Statute 63.054(1).
I have filed the Florida Putative Father Registry Claim of Paternity with the Office of Vital Statistics. A copy is enclosed.
I am pledging to take fully [sic] responsibility and commitment for the care of my child. I intend to take full custody and provide a loving home, food and clothing for my child. I am willing to take financial responsibility for all living and medical expenses.
I am working and enrolled at [a college][1]. I have already pre-arranged a state licensed daycare, license number [omitted] for my child when I am away at work or school. I have a crib and am in the process of setting up a nursery in my home.
Please contact me regarding this legal matter. Please know that my intentions are to Fully Contest this adoption.
Above the notary's signature, the letter contains the language "Subscribed and sworn before me this 14 Day of July, 2008." In addition to sending this letter to Appellee, Appellant filed it with the circuit court on August 1, 2008. Appellee proceeded with its plan to place Appellant's child for adoption.
The child was born on September 13, 2008. From the hospital, the child was taken to the home of the prospective adoptive parents, where the child has lived ever since. On October 7, 2008, with the birth mother's consent, Appellee filed a Petition for Termination of Parental Rights, pursuant to section 63.087(4), Florida Statutes (2008). Appellee alleged that Appellant's consent to the adoption of his child was not required because he was an "unmarried biological father" within the meaning of section 63.032(19), Florida Statutes (2008), and he had not complied with the requirements of section 63.062(2). Section 63.062(2) provides as follows:
In accordance with subsection (1), the consent of an unmarried biological father shall be necessary only if the unmarried biological father has complied with the requirements of this subsection.
. . . .

*1106 (b) With regard to a child who is younger than 6 months of age at the time the child is placed with the adoptive parents, an unmarried biological father must have demonstrated a full commitment to his parental responsibility by having performed all of the following acts prior to the time the mother executes her consent for adoption:
1. Filed a notarized claim of paternity form with the Florida Putative Father Registry within the Office of Vital Statistics of the Department of Health, which form shall be maintained in the confidential registry established for that purpose and shall be considered filed when the notice is entered in the registry of notices from unmarried biological fathers.
2. Upon service of a notice of an intended adoption plan or a petition for termination of parental rights pending adoption, executed and filed an affidavit in that proceeding stating that he is personally fully able and willing to take responsibility for the child, setting forth his plans for care of the child, and agreeing to a court order of child support and a contribution to the payment of living and medical expenses incurred for the mother's pregnancy and the child's birth in accordance with his ability to pay.
3. If he had knowledge of the pregnancy, paid a fair and reasonable amount of the expenses incurred in connection with the mother's pregnancy and the child's birth, in accordance with his financial ability and when not prevented from doing so by the birth mother or person or authorized agency having lawful custody of the child.
. . . .
(d) An unmarried biological father who does not comply with each of the conditions provided in this subsection is deemed to have waived and surrendered any rights in relation to the child, including the right to notice of any judicial proceeding in connection with the adoption of the child, and his consent to the adoption of the child is not required.
Regarding subparagraph (2)(b)2, Appellee made only one argument: that the content of Appellant's letter did not adequately reflect the statutorily required manner of expressing a full commitment to assume parental responsibilities for his child.
On December 19, 2008, Appellee filed a Motion to Amend the Petition for Termination of Parental Rights. The proposed amended petition contained the additional argument that Appellant's July 14, 2008, letter did not comply with section 63.062(2)(b)2 because it was not an affidavit. To support this argument, Appellee alleged that Appellant had not taken an oath when his letter was notarized. Appellee further argued that section 63.062(3) imposes on unmarried biological fathers the obligation to file a verified response to a notice of intended adoption plan and that Appellant's July 14, 2008, letter did not constitute a verified response. The trial court later granted the motion to amend. In the meantime, on the same day that Appellee filed the motion to amend, Appellant filed an "Amended Affidavit/Verified Response," which incorporated the July 14, 2008, letter by reference and included additional statements. The "Amended Affidavit/Verified Response" is notarized and contains the language "sworn to and subscribed."
After Appellant filed his answer to the amended petition, Appellee filed a motion for summary judgment, arguing that because Appellant's July 14, 2008, letter was neither an affidavit nor a verified response, his consent to the adoption was not required, as a matter of law. To support its motion, Appellee deposed the person who *1107 notarized the July 14, 2008, letter. The notary's testimony revealed that he failed to administer an oath to Appellant, and this testimony was undisputed.
The trial court concluded that Appellant was required to file an affidavit under section 63.062(2)(b)2 and a verified response under section 63.062(3). Concluding that Appellant had satisfied neither of these requirements and that Chapter 63 mandated strict compliance with these requirements, the trial court granted Appellee's motion for summary judgment and entered final orders determining that Appellant's consent was not required for the adoption and terminating Appellant's access to his child.
To determine whether the trial court erred in concluding that Appellant was statutorily prohibited from contesting the adoption of his biological child, we must address three issues: (A) what the Florida Statutes require of unmarried biological fathers who wish to contest the adoption of their biological children; (B) whether the relevant statutes demand strict compliance with those requirements or something less; and (C) whether the trial court correctly determined, as a matter of law, that Appellant did not meet the required level of compliance. These issues are matters of statutory interpretation, which are reviewed de novo. See Murray v. Mariner Health, 994 So.2d 1051, 1056-57 (Fla.2008). Legislative intent, which is "chiefly derived from the language of the statute itself," governs statutory interpretation. Metro. Cas. Ins. Co. v. Tepper, 2 So.3d 209, 213 (Fla.2009). Accordingly, we begin by setting forth the pertinent statutory provisions.
Chapter 63, Florida Statutes (2008), governs adoptions. Chapter 63 is a "comprehensive statutory scheme" designed primarily to ensure "permanence, stability, and finality with regard to adoptive placements." See Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 195 (Fla.2007). In Chapter 63, the Legislature included a provision entitled "Legislative intent." § 63.022. It provides, in pertinent part, as follows:
(1) The Legislature finds that:
(a) The state has a compelling interest in providing stable and permanent homes for adoptive children in a prompt manner, in preventing the disruption of adoptive placements, and in holding parents accountable for meeting the needs of children.
(b) An unmarried mother faced with the responsibility of making crucial decisions about the future of a newborn child is entitled to privacy, has the right to make timely and appropriate decisions regarding her future and the future of the child, and is entitled to assurance regarding an adoptive placement.
(c) Adoptive children have the right to permanence and stability in adoptive placements.
(d) Adoptive parents have a constitutional privacy interest in retaining custody of a legally adopted child.
(e) An unmarried biological father has an inchoate interest that acquires constitutional protection only when he demonstrates a timely and full commitment to the responsibilities of parenthood, both during the pregnancy and after the child's birth. The state has a compelling interest in requiring an unmarried biological father to demonstrate that commitment by providing appropriate medical care and financial support and by establishing legal paternity rights in accordance with the requirements of this chapter.
§ 63.022. The Legislature has explained the order of preference for the competing interests involved in adoptions as follows:

*1108 The Legislature finds that the interests of the state, the mother, the child, and the adoptive parents described in this chapter outweigh the interest of an unmarried biological father who does not take action in a timely manner to establish and demonstrate a relationship with his child in accordance with the requirements of this chapter. An unmarried biological father has the primary responsibility to protect his rights and is presumed to know that his child may be adopted without his consent unless he complies with the provisions of this chapter and demonstrates a prompt and full commitment to his parental responsibilities.
§ 63.053(2). These provisions indicate an interest on the part of the Legislature in the timely and unequivocal assumption of full parental responsibility by biological fathers. An expectation of such a response on the part of unmarried biological fathers serves the state's compelling interest in ensuring that children are provided stable and permanent homes in a prompt manner. See § 63.022(1)(a).
The above-quoted provisions also indicate the Legislature's intent to require specific actions on the part of unmarried biological fathers to preserve their rights to their children. Section 63.062 governs when a parent's consent is required for the adoption of his or her child. Subsection (1) provides that an unmarried biological father's consent is required if "he has acknowledged in writing, signed in the presence of a competent witness, that he is the father of the minor, has filed such acknowledgment with the Office of Vital Statistics of the Department of Health within the required timeframes, and has complied with the requirements of subsection (2)." § 63.062(1)(b)5. Paragraph (2) states that an unmarried biological father's consent to an adoption "shall be necessary only if [he] has complied with the requirements of this subsection." § 63.062(2)(1). As noted above, one of the requirements of section 63.062(2) is for an unmarried biological father of a child less than six months of age to execute and file an affidavit "stating that he is personally fully able and willing to take responsibility for the child," upon service of a notice of intended adoption plan.
Section 63.062(3) requires adoption agencies to serve notice on known and locatable unmarried biological fathers before initiating adoption proceedings. That provision further specifies the content of the required notice:
The notice of intended adoption plan must specifically state that if the unmarried biological father desires to contest the adoption plan he must, within 30 days after service, file with the court a verified response that contains a pledge of commitment to the child in substantial compliance with subparagraph (2)(b)2. and a claim of paternity form with the Office of Vital Statistics, and must provide the adoption entity with a copy of the verified response filed with the court and the claim of paternity form filed with the Office of Vital Statistics.
§ 63.062(3).
Appellee convinced the trial court that section 63.062(3) imposes the requirement on unmarried biological fathers to file a verified response to the notice of intended adoption plan. It appears from the trial court's order that it believed an unmarried biological father is required to file both an affidavit, under section 63.062(2)(b)2, and a verified response, under section 63.062(3). We disagree with the trial court to the extent that it ruled that an unmarried biological father who files an affidavit under section 63.062(2)(b)2 may still be found noncompliant with Chapter 63 for failure to file a *1109 verified response. Section 63.062(3) dictates the actions of adoption agencies, not unmarried biological fathers. The specific statutory requirements to be imposed on unmarried biological fathers are set forth in section 63.062(2) alone. While section 63.062(3) is relevant to what an unmarried biological father should be expected to do under Chapter 63, it should not be interpreted as imposing requirements beyond those specified in section 63.062(2). To the extent the trial court ruled that an unmarried biological father must file a verified response in addition to an affidavit under Chapter 63, it erred.
We now consider whether the trial court erred in ruling that Appellant failed to satisfy the affidavit requirement of section 63.062(2)(b)2. The Legislature failed to define "affidavit" in the statute. Therefore, we understand the term "affidavit," as used in the statute, to carry its typical dictionary definition. See Seagrave v. State, 802 So.2d 281, 286 (Fla.2001) (noting that the meaning of words used in a statute may be ascertained by reference to a dictionary, when necessary). This Court has already established that the typical dictionary definition of "affidavit" is "a statement or declaration in writing under oath." See Swartz v. State, 316 So.2d 618, 622 (Fla. 1st DCA 1975). Thus, if section 63.062(2)(b)2 requires strict compliance with the affidavit requirement, as the trial court held, then Appellant failed to fulfill his statutory obligations because he did not take an oath when he signed the July 14, 2008, letter.
Section 63.062(2) does not expressly state the required level of compliance. The pertinent language of section 63.062(2) regarding compliance is found in subsection (1), which provides that an unmarried biological father's consent to an adoption is required only if he "has complied with the requirements of this subsection." By omitting an adverb to modify the word "complied," the Legislature neglected to state expressly what level of compliance is required. This omission is significant because the Legislature used the phrases "substantial compliance" and "strict compliance" in two other areas of Chapter 63, showing that it recognized different levels of compliance with respect to the requirements imposed on parents in adoption cases. Compare § 63.062(3) with § 63.063(1).
Section 63.062(3) requires an adoption agency seeking to place a child for adoption to notify the child's unmarried biological father that, to contest the adoption, he is required "within 30 days after service, [to] file with the court a verified response that contains a pledge of commitment to the child in substantial compliance with subparagraph (2)(b)2." (emphasis added). In contrast, section 63.063(1) provides, "Each parent of a child conceived or born outside of marriage is responsible for his or her actions and is not excused from strict compliance with this chapter based upon any action, statement, or omission of the other parent or a third party ...." (emphasis added).
Appellee argues that section 63.063(1) unequivocally requires strict compliance with every provision of Chapter 63. We disagree. By its plain language, section 63.063(1) is specific to situations where a parent has alleged fraud on the part of another person as a basis for excusal from compliance with Chapter 63. Although it could be interpreted as a general statement of the level of compliance required under Chapter 63, this interpretation would ignore the fact that the Legislature omitted any similar general statement regarding the required level of compliance in the provisions setting forth the legislative intent to govern the entire chapter. It would also ignore the fact that at least some portion of Chapter 63 requires only *1110 substantial compliance, as reflected by the plain language of section 63.062(3).
Even if section 63.063(1) were properly interpreted as a statement of general legislative intent for Chapter 63, this observation would not end our analysis of the level of compliance required under section 63.062(2)(b)2. When two statutory provisions conflict, the specific provision controls over the general one. Murray v. Mariner Health, 994 So.2d 1051, 1061 (Fla. 2008). Section 63.062(3) specifically references section 63.062(2)(b)2, while section 63.063 does not. Thus, the proper interpretation of the level of compliance required for section 63.062(2) depends on a proper construction of section 63.062(3).
An adoption agency must notify an unmarried biological father that he is required "[to] file with the court a verified response that contains a pledge of commitment to the child in substantial compliance with subparagraph (2)(b)2." This language may be interpreted in two ways. It may be construed as notifying the father that his response as a whole must substantially comply with section 63.062(2)(b)2. Alternatively, it may be construed as advising the father that the content of the pledge contained in the response must substantially comply with the content identified in section 63.062(2)(b)2. In resolving this ambiguity, we are guided by the rule that courts must read related statutory provisions together to achieve a consistent, harmonized whole, whenever possible, see Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 199 (Fla.2007) (citations omitted), and the related concept that courts must construe statutory provisions as consistent with one another if there is any reasonable basis for doing so. See Allstate Ins. Co. v. Rush, 777 So.2d 1027, 1032 (Fla. 4th DCA 2000). We have also borne in mind that if a statute may be construed in more than one way, one of which is unconstitutional, courts should adopt the constitutional construction. See Vildibill v. Johnson, 492 So.2d 1047, 1050 (Fla.1986).
A comparison of the texts of subsections (3) and (2)(b)2 of section 63.062 reveals that the Legislature did not intend for the rigid application of the procedural aspects of section 63.062(2)(b)2 to determine whether a father should have the opportunity to develop a relationship with his child. If an unmarried biological father were to follow the instructions in the statutorily-specified notice of section 63.062(3), he would file a verified response. Chapter 63 does not define "verified response." However, section 92.525, Florida Statutes (2008), sets forth the proper manner for verifying a pleading, where it is required:
(1) When it is authorized or required by law, by rule of an administrative agency, or by rule or order of court that a document be verified by a person, the verification may be accomplished in the following manner:
(a) Under oath or affirmation taken or administered before an officer authorized under s. 92.50 to administer oaths; or
(b) By the signing of the written declaration prescribed in subsection (2).
(2) A written declaration means the following statement: "Under penalties of perjury, I declare that I have read the foregoing [document] and that the facts stated in it are true," followed by the signature of the person making the declaration, except when a verification on information or belief is permitted by law, in which case the words "to the best of my knowledge and belief" may be added. The written declaration shall be printed or typed at the end of or immediately below the document being verified and above the signature of the person making the declaration.
Under this definition, a statement may be verified without an oath, so long as the *1111 declarant provides an acknowledgment that the statement is subject to the penalties of perjury. See id. Because an affidavit requires an oath, Swartz, 316 So.2d at 622, and a verified response does not, see section 92.525, a verified response is not necessarily an affidavit. Thus, an unmarried biological father could conceivably strictly follow the instructions of the notification outlined in section 63.062(3), but still fail to strictly comply with the affidavit requirement of section 63.062(2)(b)2. Certainly, the Legislature did not intend to allow adoption agencies to provide incorrect information regarding the proper manner for a father to assert his rights and then obtain a ruling that the father's consent is not required because he complied with the statutorily required notice, rather than the statute itself. In a case concerning the notice requirement of section 63.062(3), the Florida Supreme Court noted that "[a]llowing an adoption entity to have unfettered discretion in deciding whether to serve an unmarried biological father with an adoption plan may . . . implicate due process concerns." Heart of Adoptions, 963 So.2d at 200. Allowing adoption agencies to serve notice that does not accurately reflect the requirements of the statute may implicate the same due process concerns. Furthermore, the Legislature's lack of precision in its choice of words in the notice provision of section 63.062 indicates that it was less concerned with the form of an unmarried biological father's response to a notice of intended adoption plan than with the substance of it.
In arguing that the use of the phrase "strict compliance" in section 63.063(1) should control our analysis, Appellee contends that we should review the legislative history of Chapter 63 and that it supports Appellee's interpretation. Specifically, Appellee notes the following language from a Senate Staff Analysis of the 2008 amendments to Chapter 63: "The bill amends s. 63.063, F.S., adding the word `strict' to clarify that a father must strictly comply with the requirements of ch. 63, F.S., thereby eliminating any suggestion that `substantial compliance' is sufficient." See Fla. S. Bill Analysis & Fiscal Impact Statement of Mar. 12, 2008, § 9 for Bill CS/SB 1084, p. 9. This language supports Appellee's position. However, an analysis of a statute's language controls over information taken from a staff analysis, particularly where, as here, there is a direct conflict in the statutory language and the statement taken from the legislative history. Cf. Kasischke v. State, 991 So.2d 803, 810 (Fla.2008) (citation omitted) (noting that the Florida Supreme Court is "not unified in its view of the use of legislative staff analyses to determine legislative intent" and appearing to question whether such analyses can "ever assist in determining legislative intent"). There is no question that, at a minimum, the Legislature intended to require only substantial compliance with the portion of section 63.062(2)(b)2 specifying the contents of an unmarried biological father's pledge of commitment. See § 63.062(2)(b)2 (providing that a notice of intended adoption plan must advise an unmarried biological father of the requirement to "file with the court a verified response that contains a pledge of commitment to the child in substantial compliance with subparagraph (2)(b)2"). Therefore, Appellee's citation of a single statement in a single staff analysis that contradicts this language has played no part in our analysis of the level of compliance required for section 63.062(2)(b)2.
Based on a comparison of paragraphs (3) and (2)(b)2 of section 63.062, we hold that an unmarried biological father is required to substantially comply with section 63.062. This interpretation of the relevant provisions is consistent with the legislative intent of Chapter 63, which has been directly provided by the Legislature in the statutory language itself. In enacting Chapter 63, the Legislature intended to provide *1112 permanent homes for adoptive children in a prompt manner. § 63.022(1)(a). To this end, the Legislature has further indicated that any unmarried biological father who wishes to establish his inchoate parental rights must promptly demonstrate a full commitment to his parental responsibilities. § 63.022(1)(e). We do not intend by this opinion to suggest that a father who fails to do so should be permitted to interfere with the adoption of the affected child. Rather, we wish to emphasize that Chapter 63 does not elevate form over substance in the manner Appellee has suggested.
In this case, the undisputed facts show that Appellant was substantially compliant with the affidavit requirement of section 63.062(2)(b)2. He timely filed a notarized letter containing the words "sworn and subscribed" within thirty days of receiving the notice of intended adoption plan, and he filed an affidavit curing the defect in his original letter on the same day that the defect was brought to the court's attention. His original breach was so minor that even the adoption agency appears not to have noticed it until more than four months after the letter was originally filed with the circuit court. Under these circumstances, the trial court erred in concluding that Appellant failed to comply with the affidavit requirement of section 63.062(2)(b)2. The trial court has yet to rule on whether Appellant complied with the remaining provisions of Chapter 63. Accordingly, we reverse the orders appealed from and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
HAWKES, C.J. and THOMAS, J., concur.
NOTES
[1] Due to the sensitive and confidential nature of adoptions, we have redacted certain identifying information that is not pertinent to our analysis.