966 So.2d 448 (2007)
BOARD OF TRUSTEES OF the TOWN OF LAKE PARK FIREFIGHTERS' PENSION PLAN, Appellant,
v.
TOWN OF LAKE PARK, Florida, Appellee.
No. 4D06-4179.
District Court of Appeal of Florida, Fourth District.
October 3, 2007.
*449 Matthew J. Mierzwa, Jr. of Mierzwa & Associates, P.A., Lake Worth, for appellant.
James W. Linn and Glenn E. Thomas of Lewis, Longman & Walker, P.A., Tallahassee, for appellee.
Richard A. Sicking, Coral Gables, for Amicus Curiae Florida Professional Firefighters, Inc., International Association of Firefighters, AFL-CIO.
METZGER, ELIZABETH A., Associate Judge.
The Board of Trustees of the Town of Lake Park Firefighters' Pension Plan ("Board") appeals a final summary judgment entered in favor of the Town of Lake Park, Florida ("Town"). In the summary judgment order, the trial court ruled that the Town had no obligation to make any further payment to the Town of Lake Park Firefighters' Pension Plan ("Plan"). The trial court also granted final summary judgment in favor of the Town on all claims raised within the Board's counterclaims. We reverse.
The Town filed a complaint seeking a declaration of the Town's rights and responsibilities under Florida law upon the termination of the Plan. The Plan was a defined benefit pension plan created for the Town's firefighters. The Plan was established by municipal ordinance ("Ordinance") and was required to comply with Chapter 175, Florida Statutes. All firefighters employed by the Town became members of the Plan upon their employment with the Town. The Town's firefighters were required, per Ordinance, to make contributions to the Plan in the amount of five percent of their earnings.
On June 5, 2002, the Town and Palm Beach County entered into an Interlocal Agreement for Fire Protection and Emergency Medical Services ("Agreement"). Pursuant to the Agreement, Palm Beach County agreed to provide the Town with fire and emergency medical services. Furthermore, the Agreement required Palm Beach County to hire all the Town's firefighters. As a result of the Agreement, effective 7:30 am on July 29, 2002, the Town terminated its firefighting staff and Palm Beach County, at the same time, hired the same firefighting staff as Palm Beach County employees. When the firefighters were hired by Palm Beach County, they became mandatory members of the Florida Retirement System.
On or about July 29, 2002, due to the termination of all Plan members, the Plan was officially terminated and all contributions to the Plan ceased. Upon Plan *450 termination, the Board had the sole authority to determine how Plan assets were to be distributed. As a result, the Board decided that accrued benefits should be paid out to Plan members in the form of lump sum distributions.[1] The Board directed the Plan's actuary to determine the value of all accrued benefits as of June 30, 2002. The actuary calculated the value of the accrued benefits to be $2,072,783. The Plan's asset value was less than the accrued benefits, as of the date of termination. It was the Board's position that the Town was obligated to pay the difference between the asset value of the Plan and the accrued benefits as of the date of termination. The Town disagreed and proceeded to file a complaint for declaratory relief. The Board filed a counterclaim, alleging the Town violated sections 175.361, 112.0515 and 175.091(d), Florida Statutes. The Board further alleged within its counterclaim that the Town breached the Agreement.
In January 2003, pursuant to the provisions of the Plan and Florida law, the Board approved the following distribution of the Plan assets: (1) one Plan member, who was eligible for retirement, received the full value of his accrued benefit; (2) three Plan members, who had 10 or more years of service, but who were not yet eligible for retirement, received a portion of their accrued benefit; and (3) the remaining nine Plan members, each with less than 10 years of service, received no distribution from the Plan.
Section 175.091, Florida Statutes, governs the creation and maintenance of firefighter pension funds. The main funding sources for firefighter pension funds are: (1) a mandatory five percent contribution or payment by each firefighter employed by the involved municipality; (2) an excise tax on fire insurance premium payments to fire insurance companies, fire insurance associations or other property insurers; and (3) a mandatory payment by the municipality of "a sum equal to the normal cost of and the amount required to fund any actuarial deficiency shown by an actuarial valuation as provided in part VII of chapter 112." See § 175.091(1)(a)-(g), Fla. Stat. (2006). Prior to termination of the Plan, mandatory contributions were made to the Plan by the Town, on a yearly basis, in accordance with contribution amounts determined by the Plan's actuary to fund actuarial deficiencies.
Section 175.361, Florida Statutes, specifically pertains to the termination of pension plans. Such statute reads, in part, as follows:
Upon termination of the plan by the municipality or special fire control district for any reason or because of a transfer, merger, or consolidation of governmental units, services, or functions as provided in chapter 121, or upon written notice by the municipality or special fire control district to the board of trustees that contributions under the plan are being permanently discontinued, *451 the rights of all employees to benefits accrued to the date of such termination and the amounts credited to the employees' accounts are nonforfeitable.

§ 175.361, Fla. Stat. (2006) (emphasis added).
In 1999, the Legislature amended various provisions contained within Chapter 175. Such amendments included the addition of the following language: "the rights of all employees to benefits accrued to the date of such termination and the amounts credited to the employees' accounts are nonforfeitable." § 175.361, Fla. Stat. (2006). Section 175.361(3) also sets forth a methodology to be followed for apportionment and distribution of the Plan's "asset value" as of the date of Plan termination.
In addition to the provisions of Chapter 175, Chapter 112 also applies to the Plan. Such Chapter contains the following pertinent provisions:
It is hereby declared to be the policy of this state that in any consolidation or merger of governments or the transfer of functions between units of governments either at the state or local level or between state and local units, the rights of all public employees in any retirement or pension fund shall be fully protected. No consolidation or merger of governments or governmental services, either state or local, accomplished in this state shall diminish or impair the rights of any public employee in any retirement or pension fund or plan which existed at the date of such consolidation or merger and in which the employee was participating, nor shall such consolidation or merger result in any impairment or reduction in benefits or other pension rights accruing to such employee.
§ 112.0515, Fla. Stat. (2006).
The Legislature has specifically declared that consolidations, mergers or transfers of government or governmental functions may not diminish or impair employees' rights or benefits in a retirement or pension plan or fund in which the employee was participating in at the time of the consolidation, merger or transfer. Id. Furthermore, pension statutes are to be liberally construed in favor of the intended recipients. Greene v. Gray, 87 So.2d 504, 507 (Fla.1956).
The lower court found that the Board appropriately followed the method of distribution of the Plan's assets as set forth within section 175.361, Florida Statutes, upon termination of the Plan. However, the trial court stated that the statutorily mandated distribution methodology required by section 175.361 provided for less than full payment to certain Plan members, if Plan assets were inadequate to pay every firefighter member in full. As such, the lower tribunal concluded that "[i]f all assets are exhausted by payments to higher-ranking categories, then members of any lower category receive nothing. The Statute contains no provision for the municipality to make up for a deficit so that all members receive all their benefits in full." However, the trial court did not apply the "nonforfeitable" clause contained within section 175.361. In construing statutes, the court must, to the extent possible, give effect to all parts of a statute. Kepner v. State, 577 So.2d 576, 578 (Fla. 1991). Additionally, the trial court did not address other pertinent provisions of Chapters 175 and 112. The trial court's ruling resulted in nine Plan members receiving absolutely no distribution from the Plan upon termination, despite such members making mandatory contributions to the Plan in the amount of five percent of their earnings. Such ruling further resulted in other Plan members receiving payments less than their accrued benefits at the time of termination.
*452 We conclude that the trial court erred when it found, as a matter of law, that the Town had no obligation to fund the Plan's actuarial shortfall present at the time the Town's actions resulted in a termination of the Plan. It is undisputed that as a result of the Town's decision to enter into the Agreement, the Plan was terminated. It is further undisputed that prior to termination of the Plan, the Town funded, on a yearly basis, actuarial deficiencies of the Plan determined by the Plan's actuary, as required by the provisions of the Plan and section 175.091(1)(d), Florida Statutes. Certainly, if the Town had not entered into the Agreement, the Town would have had a continuing obligation to fund actuarial deficiencies within the Plan. The Town espouses that it had the ability to elect to enter into the Agreement, which resulted in termination of the Plan, without addressing the Plan's actuarial deficiency present at the time of termination. Such position is not supported by Florida law.
Once the Board, per its authority, elected the asset distribution method to be employed, the Plan's actuary calculated that there indeed was an actuarial deficiency within the Plan, as the Plan's assets were insufficient to meet the accrued benefits to be distributed to Plan members. Section 175.091(1)(d), Florida Statutes, required the Town to make a mandatory payment of "a sum equal to the normal cost of and the amount required to fund any actuarial deficiency shown by an actuarial valuation as provided in part VII of chapter 112." The Town's argument that it had no obligation to fund the actuarial deficiency inasmuch as the Board elected to distribute the Plan funds in a way that was more costly than other available alternatives, does not have a legal basis. The Board had the sole authority to choose the method of distribution of the Plan assets at termination, which it did. Once the distribution method was chosen by the Board, the Board appropriately followed the statutory procedure for distributing the Plan's assets available for distribution at the time of termination as contained within section 175.361, Florida Statutes. This same statute also clearly dictated that the benefits accrued to the date of termination were "nonforfeitable." Additionally, inasmuch as the Town's decision to enter into the Agreement resulted in the termination of the Plan, there could be no impairment or reduction in benefits or other pension rights accruing to any firefighter Plan member. See § 112.0515, Fla. Stat. (2006).
Based upon the foregoing, we reverse the trial court's entry of final summary judgment in favor of the Town and against the Board and remand for further proceedings consistent with this opinion.
Reversed and Remanded.
KLEIN and HAZOURI, JJ., concur.
NOTES
[1] Before making a final decision, the Board sought an opinion from the Department of Management Services Division of Retirement (the "Division") regarding the Town's obligation to fund the Plan to pay vested benefits to Town firefighters upon termination of the Plan, inasmuch as the Plan assets were not sufficient to pay the accrued benefits. The Division concluded that the Town had a duty to ensure there were sufficient funds for payment of accrued benefits and liabilities. The Division further noted that the Town exercised its authority to terminate the Plan and had the ability, through its taking and budgeting authority, to secure revenues to pay sums owed to the firefighters for nonforfeitable benefits. An agency's interpretation of a statute it is charged with enforcing is entitled to great deference. Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844 (Fla. 1st DCA 2002).