LABARGA, J.
Appellants Governor Rick Scott, Attorney General Pamela Jo Bondi, and Chief Financial Officer Jeff Atwater, in their capacity as the State Board of Administration of Florida, and John Miles, Secretary of the Department of Management Services of Florida, appealed a judgment of the Circuit Court of the Second Judicial Circuit in and for Leon County to the First District Court of Appeal, which certified to this Court that the appeal is one presenting issues of great public importance that require immediate resolution by this Court. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const.
In this case, we consider the constitutionality of certain provisions of chapter 2011-68, Laws of Florida, enacting Senate Bill 2100, which as of July 1, 2011, converted the Florida Retirement System (FRS) from noncontributory by employees to contributory, required all current FRS members to contribute 3% of their salaries to the retirement system, and eliminated the retirement cost-of-living adjustment for creditable service after the effective date of the act.[1] The circuit court held that *382 these amendments violated three separate provisions of the Florida Constitution— article I, section 10, which prohibits laws impairing the obligation of contracts; article X, section 6, which provides that no private property shall be taken except for a public purpose and with full compensation paid therefor; and article I, section 6, providing that the right of public employees to bargain collectively shall not be denied or abridged. Based on these rulings, the circuit court held the challenged amendments to be unconstitutional and ordered the appellants to reimburse, with interest, all funds deducted or withheld pursuant to the challenged provisions from the compensation or cost-of-living adjustments of employees who were members of the FRS prior to July 1, 2011.
The appellants and supporting amici (for ease of reference collectively referred to herein as “the State”) contend on appeal, as they did in the circuit court, that the laws are facially constitutional.[2] For the reasons explained below, we agree with the State and reverse the judgment of the circuit court based on our conclusion that the Legislature did not violate the Florida Constitution in enacting the challenged provisions of chapter 2011-68, Laws of Florida.
BACKGROUND
We begin with an overview of the challenged provisions of chapter 2011-68, Laws of Florida. ■ Since 1975, until the July 1, 2011, effective date of the amendments at issue here, the FRS was noncontributory for most state and local employee members, meaning that the plan was funded entirely by public employer contributions. Further, prior to the 2011 amendments, the FRS plan provided for retired members to receive a cost-of-living adjustment (COLA) equal to 3% of the total monthly benefit, which was calculated once yearly. The plaintiffs and intervenors below challenged two facets of the 2011 pension amendments — the amendments contained in sections 5, 7, 9, 11, 13, 24, 26, 29, 32, 33, 39, and 40 of chapter 2011-68, Laws of Florida, requiring current state and local members of the FRS to pay 3% of their gross compensation into the pension plan, and the amendment contained in section 17 of chapter 2011-68, Laws of Florida, eliminating COLA adjustments for service performed by FRS members after June 30, 2011.[3]
*383 The circuit court decided the case on cross motions for summary judgment based on a stipulation that there were no material facts in dispute. The facts that the circuit court relied on included the fact that “the FRS has been operating well above the 80% funding ratio recommended by experts” and “according to the State Board of Administration, which is responsible for investing funds deposited in the FRS, the FRS is one of the ‘most well-funded and healthiest public pension funds in the United States.’ ” The court’s order also recognized the following undisputed facts: “Florida faced a budget shortfall of $8.6 billion at the start of the 2011 legislative session. The legislature calculated the savings to be achieved from the challenged portions of Senate Bill 2100 to be approximately $861 million. There was also record evidence, unrebutted, that the legislature’s appropriations for 2011-2012 left nearly $1.2 billion in general revenue unspent for the year.” The trial court also noted the fact that the amendments significantly reduced the employer contributions to the FRS and that the amendments were not enacted to make the FRS actuarially sound but were intended to respond to the State’s projected budget shortfall.
With this factual backdrop, and relying primarily on the language contained in section 121.011(3)(d), Florida Statutes (1974), a provision known as the “preservation of rights” statute, the circuit court held that the rights of the members of the FRS to the noncontributory retirement plan with a COLA, which was in effect prior to the amendments, were contractual in nature, that they were legally enforceable as valid contract rights, and could not be abridged in any way. The preservation of rights section, enacted in 1974 at the same time that the FRS was amended to be noncontributory for most public employees, provided then and continues to provide now as follows:
„ (3) PRESERVATION OF RIGHTS.—
[[Image here]]
(d) The rights of members of the retirement system established by this chapter shall not be impaired by virtue of the conversion of the Florida Retirement System to an employee noncontributory system. As of July 1, 1974, the rights of members of the retirement system established by this chapter are declared to be of a contractual nature, entered into between the member and the state, and such rights shall be legally enforceable as valid contract rights and shall not be abridged in any way.
See § 121.011(3)(d), Fla. Stat. (1974); § 121.011(3)(d), Fla. Stat. (2012); ch. 74-302, § 1, at 937, Laws of Fla. The circuit court held that the Legislature substantially breached the employees’ contract rights guaranteed by the preservation of rights statute by requiring employee contributions to the FRS and by elimination of the COLA, and further held that this breach was not justified by the existence of a significant budget shortfall where other, *384 reasonable alternatives existed to preserve the State’s contract with FRS members.
In so ruling, the circuit court acknowledged this Court’s 1981 decision in Florida Sheriffs Ass’n v. Department of Administration, 408 So.2d 1033, 1037 (Fla.1981), in which we held that the preservation of rights statute “vest[ed] all rights and benefits already earned under the present retirement plan” but did not preclude the Legislature from altering benefits prospectively for future state service in the existing noncontributory plan. However, the circuit court concluded that the Florida Sheriffs decision did not allow the Legislature to “completely gut and create a new form of pension plan.” Finally, the circuit court concluded that the challenged portions of chapter 2011-68, Laws of Florida, also effected an unconstitutional taking of private property without full compensation and abridged the rights of public employees to bargain collectively over conditions of employment, to wit, retirement benefits.
Thus, this case turns on the question of whether the challenged provisions of chapter 2011-68, Laws of Florida, violate the contracts clause, the takings clause, or the collective bargaining clause of the Florida Constitution. The State also challenges the refund remedy ordered by the trial court. We turn first to the applicable standards of review.
ANALYSIS
I. Standards of Review
Determination of whether a statute is constitutional is a pure question of law which is reviewed de novo. See Crist v. Ervin, 56 So.3d 745, 747 (Fla.2010). When the question involves both factual and legal issues, the Court will review a trial court’s factual findings for competent, substantial evidence, while the legal question is reviewed de novo. See N. Florida Women’s Health and Counseling Serv., Inc. v. State, 866 So.2d 612, 626-27 (Fla.2003). Where there is no genuine issue of material fact, this Court’s review of a summary judgment is de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Thus, this Court’s review of whether the challenged provisions of chapter 2011-68, Laws of Florida, when considered in light of the undisputed facts, unconstitutionally impair a contract with members of the Florida Retirement System, effect an unconstitutional taking from the members, or abridge the right of public employees to collectively bargain will be de novo. See also State v. Sigler, 967 So.2d 835, 841 (Fla.2007) (reviewing de novo the application of the statute to facts of the case to determine if the statute is constitutional).
We are ever mindful that “[w]hile we review decisions striking state statutes de novo, we are obligated to accord legislative acts a presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever possible.” Fla. Dep’t of Revenue v. Howard, 916 So.2d 640, 642 (Fla.2005). Statutes come to the Court “clothed with a presumption of constitutionality and must be construed whenever possible to effect a constitutional outcome.” Crist v. Fla. Ass’n of Criminal Def. Lawyers, Inc., 978 So.2d 134, 139 (Fla.2008). “Absent a constitutional limitation, the Legislature’s ‘discretion reasonably exercised is the sole brake on the enactment of legislation.’ ” Id. at 141 (quoting Bush v. Holmes, 919 So.2d 392, 406 (Fla.2006) (quoting State v. Bd. of Pub. Instruction for Dade County, 126 Fla. 142, 170 So. 602, 606 (1936))). “[E]very reasonable doubt should be resolved in favor of a law’s constitutionality.” Franklin v. State, 887 So.2d 1063, 1080 (Fla.2004). We note, however, that “pension statutes are to be *385 liberally construed in favor of the intended recipients.” Bd. of Trustees of Town of Lake Park Firefighters’ Pension Plan v. Town of Lake Park, 966 So.2d 448, 451 (Fla. 4th DCA 2007) (citing Greene v. Gray, 87 So.2d 504, 507 (Fla.1956)).
Further, we have long recognized that “[t]he court should not declare a statute to be void or inoperative on the ground that it is opposed to a spirit that is supposed to pervade the Constitution, or because the statute is considered unjust or unwise or impolitic.” State ex. rel. Johnson v. Johns, 92 Fla. 187, 109 So. 228, 231 (1926). “The wisdom, policy, or motives which prompt a legislative enactment, so far as they do not contravene some portion of the express or implied limitation upon legislative power found in the Constitution, are not subject to judicial control.” State ex rel. Davis v. Rose, 97 Fla. 710, 122 So. 225, 231 (1929). Thus, our ruling today expresses no view as to the wisdom, policy, or motives behind the challenged statutory provisions.
Our decision turns in significant part on determining if the contract rights granted by the preservation of rights statute, section 121.011(3)(d), include the right to a continuing noncontributory retirement plan with a COLA for those employees who were members of the FRS prior to July 1, 2011, and whether those rights, if any, have been impaired in violation of the Florida Constitution by the challenged amendments. In determining the question of unconstitutional contract impairment in Florida, where a contract has been found to exist and to have been impaired by subsequent legislation, this Court in Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla.1979), adopted a balancing approach to determine if a statute unconstitutionally impairs a contract. We recognized in Pomponio that “virtually no degree of impairment” will be tolerated, id. at 780, but “allow[ed] the court to consider the actual effect of the provision on the contract and to balance a party’s interest in not having the contract impaired against the State’s source of authority and the evil sought to be remedied.” Florida Ins. Guar. Ass’n, Inc. v. Devon Neighborhood Ass’n, Inc., 67 So.3d 187, 193 n. 6 (Fla.2011) (citing Pomponio, 378 So.2d at 780).
Where, as here, the contract at issue is with a governmental entity, the Supreme Court in U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), explained:
As with laws impairing the obligations of private contracts, an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. In applying this standard, however, complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State’s self-interest is at stake. A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all.
Id. at 25-26, 97 S.Ct. 1505 (emphasis added; footnote omitted). “[A] State is not completely free to consider impairing the obligations of its own contracts on a par with other policy alternatives” and “is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well.” Id. at 30-31, 97 S.Ct. 1505. The government’s significant impairment of its own contract is not justified by necessity if “the State[ ] could have adopted alternative means” of achieving its goals without alter *386 ing the contract rights. See id. at 30, 97 S.Ct. 1505.
With these principles in mind, we turn next to the question of whether the 2011 amendments unconstitutionally impair the contract rights of existing members of the Florida Retirement System. We then discuss whether the amendments effect an unconstitutional taking and whether the amendments impair constitutionally guaranteed rights to collectively bargain concerning pension issues.
II. Impairment of Contract and Unconstitutional Taking
The State contends that the 2011 amendments to the FRS operate prospectively only and, thus, the trial court’s order finding that the law impairs existing contract rights of current members of the FRS is inconsistent with this Court’s interpretation of the preservation of rights statute in Florida Sheriffs. Both parties agree that if an existing member of the FRS retired on June 30, 2011, none of his or her benefits would be diminished. Both parties agree that an employee continuing on in employment will be required to contribute 3% of his or her gross compensation to the FRS in order to receive the same retirement benefit that he or she would have expected to receive, absent the amendments, without making any contribution. Further, the amendments provide that upon retirement, any right to a COLA is limited to a calculation giving credit only for the employee’s service performed prior to July 1, 2011. It is for these employees who continue on in employment after June 30, 2011, that the parties’ characterization of their rights and benefits diverge.
The State contends that because the 3% contribution requirement and the elimination of the COLA did not take effect until July 1, 2011, and did not diminish any benefits earned as of that date, the amendments were purely prospective. The ap-pellees and supporting amici (referred to hereafter as “the challengers”) contend that the employees’ contractual right to have their retirement benefits calculated under the law in effect prior to July 1, 2011, vested pursuant to the preservation of rights statute upon commencement of their employment and that those rights are now impaired by the amendments. It is contended, without dispute, that even though the actual changes in the plan occur at a future date, the changes diminish the total expected retirement benefits that could have accrued over the entire projected life of a member’s employment for those persons employed prior to the amendments who continue their employment after the amendments. Thus, the challengers contend, the rights to a noncontributory plan and to a continuing COLA were part of the contract established under section 121.011, Florida Statutes (1974), as it has been continually enacted, and are rights to be honored over the life of their employment with the State.
The trial court agreed with the challengers that the rights to a noncontributory plan and a continuing COLA based on all years worked, both pre-amendment and post-amendment, are rights that were contractually guaranteed upon commencement of employment and could not be altered for any portion of the member’s employment without impairing that contract. Although the trial court also recognized that this Court’s decision in Florida Sheriffs authorized prospective amendments to the retirement plan, the court found that it did so only within the context of the existing noncontributory plan. Therefore, a review of our decision in Florida Sheriffs is necessary for our determination of these issues.
In Florida Sheriffs, special-risk law enforcement members of the FRS filed suit challenging the constitutionality of sections *387 121.091(l)(a) and (11), Florida Statutes (1979). See 408 So.2d at 1034. Those provisions reduced, prospectively, the special-risk credit that the members would earn toward retirement from 3% to 2%. The plaintiffs in Florida Sheriffs contended that the Legislature was contractually bound to the three percent credit by its prior enactment of the preservation of rights provision in section 121.011(3)(d), Florida Statutes (1974). They characterized the preservation of rights statute as elevating Florida’s retirement system to a binding contractual relationship between employees and the State, thereby contractually barring the State from reducing the special-risk credit for those employees. See id. at 1034-35.
As noted earlier, the preservation of rights provision contained in section 121.011(3)(d), provides in pertinent part that “[a]s of July 1, 1974, the rights of members of the retirement system established by this chapter are declared to be of a contractual nature, entered into between the member and the state, and such rights shall be legally enforceable as valid contract rights and shall not be abridged in any way.” § 121.011(3)(d), Fla. Stat. In deciding Florida Sheriffs, we were required to determine the contractual rights which were created by this preservation of rights statute. In order to ascertain the Legislature’s intent in enacting that provision, we examined the case law in effect prior to its enactment. We first noted in Florida Sheriffs that long before the enactment of the preservation of rights statute, this Court had held that Florida’s constitutional contracts clause “did not protect a governmental mandatory retirement system and that the legislature could modify or alter benefits provided by such a retirement plan.” Id. at 1035 (citing Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933)). We also discussed the early case of State ex rel. Holton v. City of Tampa, 119 Fla. 556, 159 So. 292 (1934), in which this Court held that “even where an employee had already retired, the legislature had the authority to reduce the retirement benefits under a mandatory plan.” Florida Sheriffs, 408 So.2d at 1036 (citing Holton, 159 So. at 293). The Holton Court stated: “But except in a case admitting of no other construction, a statutory retirement provision will not be construed as a contractual limitation binding on the legislative prerogative to fix the amount of retirement pay from time to time, so long as entire deprivation is not thereby attempted under the guise of regulation of the amount of compensation.” Holton, 159 So. at 293.
In our analysis in Florida Sheriffs, we also considered the case of Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313, 315 (1940), where active employees of the City of Miami who were entitled to retirement benefits under the City’s mandatory retirement act brought an action challenging an amendatory act that repealed the original retirement plan and substituted a new one in its place, which was binding on all participants in the original pension plan. We stated in Voorhees that the rights of such persons in a pension fund “are not such as will prevent the Legislature from repealing or amending the statute, merely because the officer or employee has contributed to the fund so long as the fund existed and the law stood unre-pealed.” Voorhees, 199 So. at 315 (quoting Holton, 159 So. at 292-93). Thu§, we concluded in Florida Sheriffs, “[u]nder the prior case law, if the retirement system was mandatory as it is now, the legislature could at any time alter the benefits retroactively or prospectively for active employees.” 408 So.2d at 1037.
It was against this backdrop of precedent that allowed both prospective and retroactive changes to retirement benefits *388 already earned under a mandatory retirement plan that the Legislature enacted the preservation of rights statute in 1974 to expressly create contract rights for existing members of the retirement system. We concluded in Florida Sheriffs that the preservation of rights provision “does alter the Anders-Holton rationale for benefits already earned by active employees up to the time the legislature changes the law.” Id. at 1037. We explained: “That rule of law has now been changed by the ‘preservation of rights’ section which modifies the Voorhees rule and vests all rights and benefits already earned under the present retirement plan so that the legislature may now only alter retirement benefits prospectively.” Florida Sheriffs, 408 So.2d at 1037 (first emphasis added). Importantly, we cautioned in Florida Sheriffs as follows:
We stress that the rights provision was not intended to bind future legislatures from prospectively altering benefits which accrue for future state service. To hold otherwise would mean that no future legislature could in any way alter future benefits of active employees for future services, except in a manner favorable to the employee. This view would, in effect, impose on the state the permanent responsibility for maintaining a retirement plan which could never be amended or repealed irrespective of the fiscal condition of this state. Such a decision could lead to fiscal irresponsibility. It would also impose on state employees an inflexible plan which would prohibit the legislature from modifying the plan in a way that would be beneficial to a majority of employees, but would not be beneficial to a minority. Since two different plans cannot exist for the same type of employee, the implementation of appellants’ contention would also bind the legislature to this plan for future employees. We find appellants’ contention is not in accordance with the intent of the legislature and conclude that the legislature has the authority to modify or alter prospectively the mandatory, noncontributory retirement plan for active state employees.
Florida Sheriffs, 408 So.2d at 1037 (emphasis added). It is the import of this last statement, recognizing legislative power to modify prospectively “the mandatory, noncontributory retirement plan,” that is at the heart of the challengers’ claim. The challengers contend that the reference to “the authority to modify or alter prospectively the mandatory, noncontributory retirement plan” means that the Legislature may alter features of the plan prospectively, but only within the context of it remaining a noncontributory plan.
The trial court in the present case agreed and concluded that Florida Sheriffs did not control the question of contractual impairment in the instant case because the amendments in this case changed the fundamental nature of the plan from noncontributory to contributory. The trial court concluded:
While Sheriffs does authorize the legislature to make prospective alterations to benefits which accrue for future state service within the “mandatory, noncontributory retirement plan,” absolutely nothing in it can be read as authorizing the legislature to change the fundamental nature of the plan itself.
The challengers and the trial court are incorrect in concluding that we intended our decision in Florida Sheriffs to apply only to prospective changes within a noncontributory plan. A reading of the entire decision discloses our conclusion that the preservation of rights statute was enacted to give contractual protection to those retirement benefits already earned as of the date of any amendments to the plan. We recognized the authority of the Legislature *389 to amend a retirement plan prospectively, so long as any benefits tied to service performed prior to the amendment date are not lost or impaired. Moreover, we took special care in Florida Sheriffs to emphasize that our construction of the preservation of rights statute not be interpreted as binding future legislatures. The challengers have invited this Court to recede from Florida Sheriffs, but we decline to do so.
We again hold, as we did in Florida Sheriffs, that the preservation of rights statute was not intended to bind future legislatures from prospectively altering benefits for future service performed by all members of the FRS. We further hold that the 2011 amendments requiring a 3% employee contribution as of July 1, 2011, and continuing thereafter, and the elimination of the COLA for service performed after that date are prospective changes within the authority of the Legislature to make. The preservation of rights statute does not create binding contract rights for existing employees to future retirement benefits based upon the FRS plan that was in place prior to July 1, 2011. As we held in Florida Sheriffs, we again hold that the actions of the Legislature have not impaired any statutorily created contract rights and, thus, we reverse the judgment of the trial court on this ground. Further, because we conclude that no contract between the State and members of the FRS has been breached, we also reverse the trial court’s judgment that a breach of contract effected an unconstitutional taking under article X, section 6, of the Florida Constitution.[4] We turn next to determine if the challenged amendments impair or abridge the rights of public employees to collectively bargain that are guaranteed by article I, section 6, of the Florida Constitution.
III. Collective Bargaining
The challengers contended in the trial court and now on appeal that the amendments requiring a 3% salary contribution and elimination of the COLA for service performed after June 30, 2011, unconstitutionally impair or abridge the right of public employees to bargain collectively on the issue of retirement benefits. The trial court agreed and held that the amendments abridge article I, section 6, of the Florida Constitution by effectively removing the subject of retirement from the collective bargaining process and rendering negotiations after the fact futile. We make clear at the outset that there is no proper claim before the Court in this appeal that the amendments violate any specific collective bargaining agreement; the trial court’s order did not address the effect of the amendments on any specific collective bargaining agreement. The issue before that court, and the issue now on appeal, is whether the amendments on their face unconstitutionally impair or abridge collective bargaining rights by precluding effective bargaining on the issue of retirement pensions and benefits. The trial court was correct that retirement pensions and benefits are mandatory subjects of public collective bargaining. See City of Tallahassee v. PERC, 393 So.2d 1147, 1150 (Fla. 1st DCA 1981), aff'd 410 So.2d 487 (Fla.1981). The right to collectively bargain, which is guaranteed to both public and private employees in Florida, is set forth in article I, section 6, of the Florida Constitution, which states in pertinent part:
*390 The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
Art. I, § 6, Fla. Const. The trial court concluded that the amendments at issue violate this provision.
In its initial brief on appeal, the State contends that “the Order was incorrect in stating that the Plan Amendment ‘effectively remov[ed] the subject of retirement from the collective bargaining process.’ The Plan Amendment does not remove the subject of retirement benefits from collective bargaining.” (Appellant’s Initial Brief at 27-28.) The State reiterated in its brief that “absolutely nothing precludes Plaintiffs from bargaining over FRS” and “the Plan Amendment does not prohibit government employees from engaging in collective bargaining over retirement benefits.” (Appellant’s Initial Brief at 25). We agree. Nothing in chapter 2011-68, Laws of Florida, prohibits public employees from collectively bargaining on the issue of retirement pensions or benefits. Nor can we conclude on appeal, in a facial challenge to the amendments, that “effective” collective bargaining has been abridged or impaired on those issues, or that the amendments render such bargaining “futile” as contended by the challengers. Because we conclude that the amendments, on their face, do not prohibit collective bargaining on issues of retirement, we do not reach the State’s argument that the Legislature may limit the right to collective bargaining on retirement issues based on the principle of separation of powers and the Legislature’s exclusive control over public funds. See art. VII, § 1(c), Fla. Const.[5]
Accordingly, based on the foregoing analysis, we reverse the judgment of the trial court in which it held that the challenged amendments impair or abridge collective bargaining rights guaranteed to public employees by article I, section 6, of the Florida Constitution.
CONCLUSION
For all the reasons set forth above, we reverse the judgment of the trial court in its entirety. We hold that the challenged provisions, sections 5, 7, 9, 11, 13, 17, 24, 26, 29, 32, 33, 39, and 40 of chapter 2011-68, Laws of Florida, are facially constitutional.[6]
It is so ordered.
*391 POLSTON, C.J., and PARIENTE, CANADY, and LABARGA, JJ., concur.
PARIENTE, J., concurs with an opinion, in which CANADY and LABARGA, JJ., concur.
LEWIS, J., dissents with an opinion.
PERRY, J., dissents with an opinion, in which LEWIS and QUINCE, JJ., concur.

. According to the Department of Management Services Division of Retirement "Participating Employers 2011” publication contained in the record below, those employers *382 participating in the FRS in 2011 included: 55 state agencies; 396 county agencies; 67 school boards; 28 community colleges; 185 cities, 6 independent hospitals, 243 special districts (these last three categories include the 26 cities, 5 independent hospitals, and 12 independent districts that are closed to new members as of January 1, 1996); and 12 other public employers not specifically designated.

. The parties, intervenors, and amici curiae are numerous. In addition to appellants Governor Rick Scott, Attorney General Pamela Jo Bondi, and Chief Financial Officer Jeff Atwa-ter, in their capacity as the State Board of Administration of Florida, John Miles, Secretary of the Department of Management Services of Florida, and appellee George Williams, the other appellees, intervenors, and amici curiae consist of a large number of state and local employees, various unions and employee organizations, the Florida Senate and the Florida House, the Florida Association of Counties, the Florida League of Cities, Florida TaxWatch Research Institute, Inc., and the National Conference on Public Employees Retirement Systems.

. The amendment contained in section 17 of chapter 2011-68, Laws of Florida, completely eliminated the COLA for all service performed after the effective date of the act. For employees' who were members of the FRS prior to July 1, 2011, their COLA will be calculated as follows: The COLA factor “shall equal the product of 3 percent multiplied by the quotient of the sum of the member's service credit earned for service before July 1, 2011, divided by the sum of the member's *383 total service credit earned.” Ch.2011-68, § 17, at 1053, Laws of Fla., amending section 121.101 (4)(c), Florida Statutes. However, under the 2011 amendments, "[s]ubject to the availability of funding and the Legislature enacting sufficient employer contributions specifically for the purpose of funding the expiration of the cost-of-living adjustment specified in subsection (4), in accordance with s. 14, Art. X of the State Constitution, the cost-of-living adjustment formula provided for in subsection (4) shall expire effective June 30, 2016, and the benefit of each retiree and annuitant shall be adjusted on each July 1 thereafter, as provided in subsection (3).” See id. Section 121.101(3), as amended in 2011, continues to provide a 3% cost-of-living adjustment to those persons who retired prior to July 1, 2011.

. However, we note that an unconstitutional taking may not be presumed based solely on a breach of contract. See, e.g., Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 224, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) ("[T]he fact that legislation disregards or destroys existing contractual rights does not always transform the regulation into an illegal taking.").

. We agree with the State that in State v. Florida Police Benevolent Ass’n, Inc., 613 So.2d 415, 421 (Fla.1992), we held that, under its power of appropriation, the Legislature could permissibly fail to fund benefits agreed to in a collective bargaining agreement. However, the issue in this case does not involve an appropriations act that failed to fund a bargained-for retirement benefit. The issue here is whether the amendments prohibit, or render futile, collective bargaining on the issue of retirement in the first instance. Where the Legislature has expressly prohibited collective bargaining, we have held those laws unconstitutional. See, e.g., Chiles v. State Emp. Attorneys Guild, 734 So.2d 1030, 1031 (Fla.1999) (invalidating “a wholesale ban on collective bargaining by government lawyers”); City of Tallahassee v. Public Emp. Relations Comm’n, 410 So.2d 487, 489 (Fla.1981) (invalidating statute prohibiting bargaining over retirement benefits); Hillsborough Cnty. Governmental Emp. Ass’n, Inc. v. Hillsborough Aviation Auth., 522 So.2d 358, 362 (Fla.1988) (holding that section 447.309(3), Florida Statutes (1985), unconstitutionally impaired the constitutional right to "effective” collective bargaining because a portion of the statute provided that collective bargaining agreements do not become effective unless and until the appropriate governmental body makes necessary amendments to its rules and ordinances in accord with the agreement).

. The following Florida statutes were amended, in pertinent part, by the sections of chapter 2011-68, Laws of Florida, held here to be constitutional; Section 5 amending *391 § 121.011, Fla. Stat. (2010); section 7 amending § 121.051, Fla. Stat. (2010); section 9 amending § 121.052, Fla. Stat. (2010); section 11 amending § 121.055, Fla. Stat. (2010); section 13 amending § 121.071, Fla. Stat. (2010); section 17 amending § 121.101, Fla. Stat. (2010); section 24 amending § 121.35, Fla. Stat. (2010); section 26 amending § 121.4501, Fla. Stat. (2010); section 29 amending § 121.571, Fla. Stat. (2010); section 32 amending § 121.70, Fla. Stat. (2010); section 33 amending § 121.71, Fla. Stat. (2010); section 39 amending § 121.78, Fla. Stat. (2010); and section 40 amending § 1012.875, Fla. Stat. (2010).