Ciklin, C.J.
The plaintiffs in the lawsuit below are four police officers who were employed by the City of Hollywood (“the City”). By virtue of their age, each officer became eligible to enter the Deferred Retirement Option Plan (“DROP”), a feature of the City’s retirement system, but they wished to defer their entry in order to increase their monthly retirement payment. Before they were ready to enter DROP, the City passed an ordinance which imposed a deadline on entry into this aspect of the City’s retirement program. The officers brought suit, seeking a declaration that the ordinance constituted an unconstitutional impairment of their right to contract and an unlawful taking of private property without compensation. Because the change to the retirement plan was a prospective *2 one, we reverse the trial court’s judgment which found in favor of the officers, and remand for further proceedings.
The City’s retirement plan for its police officers included the option of DROP, which allowed eligible officers to commence their monthly retirement payments and have them placed into an interest-bearing account while the officers continued to work and receive wages. Under the City’s retirement scheme, an officer became eligible to enter DROP either by reaching the age of fifty or completing twenty-two years of creditable service. However, upon applying for entry into DROP, an officer was required to retire within the lesser of eight years or when the officer had accrued a total of thirty years of employment with the City. Before the enactment of the ordinance at issue, officers who became eligible to enter DROP were not required to do so immediately upon qualifying — and could defer their entry.
In an attempt to resolve its financial problems, the City adopted an ordinance in September 2011 which “froze” the accrual of benefits under the retirement system that had been in place, but provided an exception for officers who were eligible to retire with normal retirement benefits on September 30, 2011:
[F]or any member who is eligible to retire with normal retirement benefits on September 30, 2011, the benefit structure in effect on September 30, 2011 shall remain in effect beyond September 30, 2011 and shall not be frozen, except that any such member who does not enter the DROP on or before September 30, 2011 shall not be eligible to enter the [DROP] after September 30, 2011 ....
On September 30, 2011, the four officers involved in this appeal met the age requirement to enter DROP, but based on the calculation method for monthly retirement payments, entry on that date would have resulted in a smaller monthly retirement payment than if they had been able to defer entry, as permitted prior to the passage of the ordinance.
In response to the ordinance, three of the officers submitted their DROP applications, but they provided that their entry into DROP was not effective until dates occurring after September 30, 2011. The City did not recognize their purported prospective entries into DROP.[1]
The four officers brought suit for declaratory relief, and requested the trial court find that the ordinance constituted a substantial impairment of their contract rights and a taking of private property without full compensation. After a bench trial, the trial court ruled in favor of the officers.
On appeal, the parties dispute whether the officers had a vested interest in delayed entry into DROP and, if so, whether the City proved it had a compelling interest in amending the retirement plan. Because we find that the ordinance was a permissible prospective amendment which did not impair vested contract rights, we need not consider the second issue. Additionally, on the facts of this case, we find no merit in the jurisdictional issue the City raises.
Article I, section 10 of the Florida Constitution provides that no “law impairing the obligation of contracts shall be passed.” Article X, section 6(a) of the Florida Constitution provides in pertinent part that “[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner *3 or secured by deposit in the registry of the court and available to the owner.”
“[W]hether in a voluntary or mandatory plan, once a participating member reaches retirement status, the benefits under the terms of the act in effect at the time of the employee’s retirement vest. The contractual relationship may not thereafter be affected or adversely altered by subsequent statutory enactments.” Fla. Sheriffs Ass’n v. Dep’t of Admin., Div. of Ret., 408 So.2d 1033, 1036 (Fla. 1981).
A recent Florida Supreme Court opinion illustrates why we must find that a prospective change to retirement benefits does not operate as an impairment of a contract or an unconstitutional taking. In Scott v. Williams, 107 So.3d 379, 381 (Fla. 2013), state employees challenged provisions of a statute which converted the state retirement system from noncontributory to contributory, required current members to contribute three percent of their salaries to the system, and eliminated the retirement cost-of-living adjustment for creditable service after the effective date of the act. In determining that the statute did not impair a contractual right, the court looked to its decision in Florida Sheriffs, and observed that it had “recognized the authority of the Legislature to amend a retirement plan prospectively, so long as any benefits tied to service performed prior to the amendment date are not lost or impaired.” Id. at 388-89. The court found that the changes to the retirement system were prospective in nature and thus “within the authority of the Legislature to make.” Id. at 389. Further, the court found that the statute did not impair any statutorily created contract rights, and thus did not result in an unconstitutional taking. Id.
Likewise, the ordinance at issue here did not impair any contract rights or operate as an unconstitutional taking of private property. Instead, it permitted officers already eligible to enter DROP to do so and to enjoy the full benefits of DROP, albeit with an imposed deadline for entry. We find that this was a permissible prospective change to the retirement plan. Accordingly, we reverse the order on appeal and remand for the trial court to determine whether, under the terms of the DROP plan, the appellees’ DROP application permits them to enter DROP as of the deadline date, withdraw their DROP application, or whether their attempt to enter DROP beyond the deadline date renders their application a nullity.

Reversed and remanded for further proceedings.

May and Damoorgian, JJ., concur.

. A fourth officer did not apply for or enter DROP.