STATE OF FLORIDA, ex rel. ANNIE B. HANBURY, joined by her Husband, J. H. HANBURY, *Relators*, v. W. H. TUNNI-CLIFFE, as Receiver of the COMMERCIAL BANK & TRUST COMPANY, of West Palm Beach, *Respondent*.

En Banc.

Opinion filed October 18, 1929.

*Scofield & Scofield,* for Relators;

*Winters, Foskett & Wilcox,* for Respondent.

STRUM, J.—This is a proceeding by mandamus, a case of original jurisdiction.

From the allegations of the alternative writ it appears that on June 28, 1926, Commercial Bank & Trust Company, a State bank, having its principal office and doing a banking business in West Palm Beach, Florida, "closed its doors and ceased to do business as a banking corporation."

When the bank closed, the relator, Annie B. Hanbury, was a depositor therein,. there being a balance due her upon an open checking account.

On November 29, 1926, respondent; W. H. Tunnicliffe, was appointed receiver of said bank by the Comptroller, and his appointment was confirmed December 11, 1926, by the circuit judge of the Fifteenth circuit. In the Comptroller's order appointing the receiver it was recited that the bank had become insolvent and was unable to meet its obligations. In the order of the circuit court confirming the appointment it was adjudicated that said bank was insolvent.

On December 9, 1927, which was within one year after the confirmation of said receiver by the circuit court, but more than one year after the place of business of the bank was closed and the bank had ceased to do business, the bank having closed on June 28, 1926, the relator, Annie B. Hanbury, filed claim with said receiver seeking the payment of dividends upon the checking account aforesaid. The claim was filed pursuant to a notice published by the receiver as authorized by Sec. 6103, C. G. L. 1927, Sec. 4163, R. G. L. 1920. The receiver refused to allow said claim, or to consider the same for the purpose of paying dividends, because it was not filed within twelve months from the date the

bank closed. See Chap. 7935, Laws of 1919, Sec. 6104, C. G. L. 1927.

The matter now comes on to be heard upon respondent's motion to quash the alternative writ heretofore issued by this Court.

The sole question presented is whether or not relator's claim is barred by Chap. 7935, *supra*, Sec. 6104, C. G. L. 1927, the material portion of which follows:

"That all claims of every kind and nature against a State bank or trust company that has been placed in the hands of a receiver must be properly sworn to and filed with the receiver within one year from the date of the 'failure' of the bank or trust company, and no claim which was not so filed within twelve months 'from the date the place of business of the bank or trust company was closed' shall be included by the receiver or Comptroller in the distribution of the assets."

Relator contends that there can be no "failure" of a State bank in legal contemplation until the bank has been adjudged to be insolvent and a receiver has been appointed and confirmed by a circuit judge pursuant to Sec. 4162, R. G. S. 1920, Sec. 6102, C. G. L. 1927, since by authority of that section the bank may contest the "rightfulness and legality" of such appointment, and that any "failure" or "closing" prior to that time is contingent only, there having been no judicial determination thereof until the receiver is confirmed, from which premise relator argues that the "failure" or "closing" of the bank contemplated by the Act of 1919 occurs only upon the judicial determination thereof involved in the confirmation of the receiver and that the date upon which the receiver is confirmed, and not the date upon which the bank actually closed, is therefore the

date upon which the period of limitation for filing claims begins to run.

The fact, however, that the bank for which a receiver is appointed by the Comptroller may contest the "rightfulness and legality" of such appointment, thereby rendering its failure "contingent" in one sense of the word until the receiver is confirmed, is not decisive of the question here presented. In that sense of the word, the failure may remain "contingent" long after the confirmation of the receiver, for Sec. 6108, C. G. L. 1927, Sec. 4167, R. G. S. 1920, as amended by Chaps. 14487 and 13576, Sec. 24, Acts of 1929, purports to authorize the Comptroller, upon conditions as may be approved by him, to thereafter surrender possession of the bank for the purpose of permitting it to resume business. *Ex parte* Amos, 114 So. R. 760. If the construction of Chap. 7935, *supra,* contended for by relator, was adopted, and a bank never regarded in legal contemplation as having "failed" until a receiver was appointed and confirmed, it would admit of the conjectural, but not impossible, consequence that if the Comptroller never appointed a receiver, or the bank's insolvency was never adjudicated, the bank would never have failed in legal contemplation, though it had long since suspended business and ceased to meet its obligations—a situation anomalous in the extreme. Moreover, as will be hereafter pointed out, a "failure" of the bank as contemplated by this statute, is not necessarily the same situation as "insolvency."

Relator further points out that no fixed time after closing is prescribed for the appointment and confirmation of a receiver, and that if the time for filing claims with the receiver begins to run from the date of actual closing, a delay in the appointment of a receiver in the case of one bank might result in reducing the time actually available for filing claims to much less than a year, while in the case

of another bank for which a receiver was promptly appointed substantially a full year would be available. Relator also argues that if no receiver was appointed until more than a year after closing, the statute could not be complied with, if the period of limitation begins to run from the date of actual closing. The first proposition involves only a matter of legislative policy; the second is based upon a hypothesis not involved in the case before us, and it is unnecessary for us to consider that phase of the matter until it is presented to us. The possibility of such a case arising is very remote.

In the interpretation of statutes words in common use are to be construed in their natural, plain and ordinary signification, unless it appears they were used in a technical or other sense. Southern Bell Tel. Co. v. D'Alemberte, 39 Fla. 25, 21 So. R. 570. The Legislature is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, but simply seek to effectuate the intent of the Legislature. It is true there are cases in which it has been held that the letter of a statute must yield to a contrary legislative intent obviously appearing from the statute when considered as a whole or *in pari materia* with other statutes. Curry v. Lehman, 55 Fla. 847, 41 So. R. 18. Such cases are few and exceptional. Such a construction is sanctioned by the courts only when there are cogent reasons for believing that the letter does not accurately disclose the intent. U. S. v. Goldenberg, 168 U. S. 95, 42 L. Ed. 394; Osborne v. Simpson, 114 So. R. 543; Fine v. Moran, 74 Fla. 47, 77 So. R. 533; State ex rel. Jordan v. Buckman, 18 Fla. 267.

The word "failure" when used in the commercial pursuits, including the conduct of the affairs of a bank, usually connotes a situation in the bank's business wherein it is unable or declines to meet its current obligations at matu-

rity, thereby leading to an enforced suspension of business. The word "failure" is not always synonymous with "insolvency." "Insolvency" is reckoned by the liability to pay; "failure" by the lack of payment. Failure is usually accompanied by or is the result of insolvency, but though failure may be regarded as presumptive evidence of insolvency, every failure does not necessarily conclusively import insolvency. Instances may occur in which a bank may prudently suspend payment temporarily and voluntarily to prevent insolvency. But such action would constitute a "failure" in the sense that the bank is unable or declines to meet its current obligations at maturity. So a "failure" within the meaning of Sec. 6104, C. G. L. 1927, may occur in the affairs of the bank although the bank has not been judicially declared "insolvent" nor a receiver appointed, and although the bank is not in fact insolvent. See Terry v. Calnan, 13 S. C. 220; American Credit Co. v. Carrollton Furn. Mfg. Co. (C. C. A.), 95 Fed. 111; Mayer v. Herman, 16 Fed. Cas. 1240; Davis v. Campbell (Ala.), 3 Stew. 319; State ex rel. Hyman v. Lewis (La.), 8 So. R. 602; Kennedy v. N. O. Savings Institution, 36 La. Ann. 847; Lea v. Bringier, 19 La. Ann. 197.

When the Legislature used the word "failure" in the statute under consideration, it is our judgment that it was used in its ordinary commercial signification and that it refers to the date upon which the bank suspended payment on its current obligations. What the Legislature meant by "failure" is somewhat elucidated, and the word interpreted by the Legislature itself, in the latter portion of the same statute when in again referring to the same matter the Legislature employs the phrase "the date the place of business of the bank was closed." It is common knowledge that the closing of the bank's doors is the outward act usually em-

ployed to indicate that the bank is unable to meet its current obligations—that it has "failed."

As a part of a comprehensive plan of revision of the banking laws, the statute hereinabove discussed was amended in 1929 so as to require such claims to be filed "within one year from the date of the qualification of the liquidator" (formerly called the receiver). See Sec. 18 of Chap. 13576, Acts of 1929. We see no occasion, however, to construe the provisions of the original Act of 1919 other than as hereinabove stated. Courts are not concerned with the wisdom or policy of a statute so long as its provisions are reasonable and do not contravene organic law. Stewart v. DeLand-Lake Helen Dr. Dist., 71 Fla. 158, 71 So. R. 32; Fine v. Moran, 74 Fla. 417, 77 So. R. 533; State v. Bryan, 50 Fla. 293, 39 So. R. 929; Osborne v. Simpson, *supra*.

The language used in the original Act of 1919, which Act controls this situation (see Brown v. People's Bank, 59 Fla. 163, 52 So. R. 719), has a plain and well understood meaning, affording no justification for a judicial departure from the specific terms of that Act in order to effectuate a supposed legislative intent to the contrary. The language employed in the original Act of 1919 and that employed in the amendatory Act of 1929, is clearly of different import and effect. In view of the fact that the terms of the 1919 Act are plain, the most reasonable inference to be drawn from the passage of the 1929 Act is that the Legislature intended a change in the existing law, and not that the 1929 Act was passed merely to clarify the existing legislative intent under the original Act. If the latter had been the purpose of 1929 Act, it is likely that such purpose would have been recited in the amendatory Act.

When there exists no express statute limiting the time within which claims of this nature must be filed, and where the receiver is a judicial receiver or agent of the court and

the time within which claims shall be filed is fixed by order of court, it is sometimes held that the time may be extended within the discretion of the court in meritorious cases. See 7 C. J. 744, 34 Cyc. 342. But that rule does not apply here. This receiver is not a judicial receiver in the sense that he is an officer of the court (Bryan v. Bullock, 84 Fla. 179, 93 So. R. 182; Bushnell v. Leland, 164 U. S. 684, 41 L. Ed. 598), and the statute expressly fixes the period of limitation, leaving no discretion either to the receiver or the courts.

It follows that the motion to quash the alternative writ should be and is hereby granted.

TERRELL, C. J., AND WHITFIELD, ELLIS, BROWN AND BUFORD, J. J., concur.