WELLS, J.
Metropolitan Casualty Insurance seeks review of the decision of the Fifth District Court of Appeal in Metropolitan Casualty Insurance Co. v. Tepper, 969 So.2d 403 (Fla. 5th DCA 2007), on the ground that it expressly and directly conflicts with a decision of the Second District Court of Appeal in Dominion of Canada v. State Farm Fire and Casualty Co., 754 So.2d 852 (Fla. 2d DCA 2000), on a question of law. We have jurisdiction, see art. V, § 3(b)(3), Fla. Const., and we approve the Fifth District’s decision in Metropolitan.
This case involves interpretation of section 627.727, Florida Statutes (2004), and the timing of an underinsured motorist (UM) insurer’s subrogation lawsuit. The Fifth District described the facts underlying this case as follows:
On May 13, 2004, [Robert] Tepper was riding his bicycle when he was hit by a vehicle owned and operated by [Angel] Lucas. [Tepper] subsequently filed a two-count complaint against Lucas and [against Tepper’s underinsured motorist insurer,] Metropolitan. In Count I, Tepper asserted a negligence claim against Lucas. In Count II, Tep-per sought to recover uninsured/under-insured (UM) benefits from Metropolitan. The complaint alleged that Tepper had suffered serious and permanent injuries as the result of Lucas’[s] negligence. Lucas and Metropolitan each filed an answer and affirmative defenses.
*211 Lucas’[s] insurance carrier tendered its policy limits of $25,000 to Tepper as full settlement of Tepper’s claim against Lucas. [Tepper’s insurer,] Metropolitan[,] did not grant Tepper permission to accept the settlement offer. Instead, Metropolitan paid Tepper $25,000 and preserved its subrogation rights against Lucas [as authorized by section 627.727(6), Florida Statutes].... Tepper accepted the funds tendered by Metropolitan. Lucas subsequently filed a motion to dismiss the count of the complaint directed to Lucas. In her motion, Lucas argued that Tepper had “constructively or actually assigned his rights as against Lucas to Metropolitan and it is Metropolitan that has the right to sue Lucas and not [Tepper].”
Over Metropolitan’s objection, the trial court granted Lucas’[s] motion to dismiss. In its order, the trial court stated that if Lucas was to be a part of the proceedings, “it would have to be based upon a third party action brought by Metropolitan.” The trial court denied Metropolitan’s subsequent motion for rehearing and this appeal ensued. Tepper has not participated in the appellate proceedings and apparently did not oppose Lucas’fs] motion to dismiss.
Metropolitan, 969 So.2d at 404-05 (footnote omitted).
After the trial court granted Lucas’s motion to dismiss Lucas from the case, Metropolitan appealed to the Fifth District. Id. Metropolitan argued that the trial court’s order dismissing Lucas and stating that “if Lucas is to be a part of these proceedings based upon the present status of the case, it would have to be based upon a third party action brought by Metropolitan” was contradictory to the statutory language in section 627.727(6)(b), Florida Statutes (2004), which provides:
If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing permission to settle, the underinsured motorist insurer must, within 30 days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist’s liability insurer. Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.
(Emphasis added.) Metropolitan argued that according to the emphasized language, its subrogation claim necessarily arises after the conclusion of Tepper’s UM claim against Metropolitan, and thus the trial court was in error in concluding that any further participation by Lucas would be as a third-party defendant. Metropolitan contended that since Lucas could not be a third-party defendant, it had to follow that Lucas should continue to be a defendant in the action brought by Tepper so that the issues of liability and damages could be determined.
The Fifth District rejected Metropolitan’s argument and held that the trial court had not abused its discretion. In reaching this conclusion, the Fifth District addressed the trial court’s ruling that Metropolitan could bring a third-party action against Lucas. The Fifth District stated:
We do conclude, however, that the trial court erred in finding that Metropolitan could bring a third-party action against Lucas. The last sentence of section 627.727(6)(b) specifically provides that a UM insurer is entitled to seek subrogation against the alleged tortfea-sor (and its liability insurer) “upon final resolution of the underinsured motorist claim.” Based on this clear and unam *212 biguous language, we conclude that Metropolitan may not file a third-party action against Lucas, but, instead, must wait to bring a separate action against Lucas after final resolution of Tepper’s UM claim.[n.4] ■
Id. at 407. Thus, the Fifth District held: (1) that it was not error for the trial court to dismiss Lucas from the lawsuit where Tepper had apparently abandoned his claim against Lucas; and (2) Metropolitan could not bring a subrogation lawsuit against Lucas until after “final resolution of the uninsured motorist claim.”
Metropolitan then petitioned this Court for review based on alleged express and direct conflict with the Second District’s decision in Dominion of Canada. In Dominion of Canada, the Second District considered a case where Sally Ruth Johnson, the tortfeasor, drove her car into Albert and Lucille Mitchel. The tortfeasor’s insurance carrier agreed to tender its $20,000 policy limits to the injured parties, the Mitchels, but the Mitchels’ UM carrier opted instead to pay the Mitchels the $20,000 to preserve its subrogation rights under section 627.727.
The UM carrier, Dominion, later sought reimbursement of the $20,000 from the tortfeasor and her liability insurer. The tortfeasor and her liability insurer responded by arguing that the statute of limitations had run on Dominion’s claim. Dominion countered that the statute of limitations had not expired because it had not started to run until “final resolution” of the UM claim between Dominion and the injured parties. To support its argument, Dominion cited section 627.727(6)(b)’s statement that “[thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.” § 627.727(6)(b), Fla. Stat. (2004) (emphasis added). Dominion argued that because it was only “entitled” to bring a subrogation claim against the tortfeasor “upon final resolution of the underinsured motorist claim,” the statute of limitations on that subrogation claim could not have begun to run until then.
The Second District rejected Dominion’s argument. The Second District explained its interpretation of section 627.727(6)(b), stating:
In our view, the last sentence of subsection (6)(b) is a permissive provision, reflecting the legislature’s intention that after an uninsured motorist insurer has paid its insured the amount of the proposed settlement, it is entitled to “seek subrogation.” The sentence contemplates that the uninsured motorist insurer would do so after the claimant’s uninsured motorist claim is finally resolved. But it does not impose the latter as a condition precedent to the former, nor employ language to the effect that no action for subrogation may be filed until then. Cf. § 766.104(1), Fla. Stat. (1997); §§ 766.106(2) and (3), Fla. Stat. (1997); § 768.28(6)(a), Fla. Stat. (1997).
Dominion of Canada, 754 So.2d at 856-57 (footnotes omitted).
*213 In summary, Dominion of Canada held that the last sentence of section 627.727(6)(b) was merely permissive and that therefore section 627.727 did not require that the statute of limitations period begin to run only once the UM claim was resolved. Metropolitan, on the other hand, held that the last sentence of section 627.727(6)(b) was mandatory and that no subrogation cause of action between Metropolitan and Lucas could be brought until the UM claim was resolved. This Court is now presented with these conflicting interpretations of section 627.727 on discretionary review. We approve the Fifth District’s decision in Metropolitan and disapprove the Second District’s decision in Dominion of Canada to the extent it conflicts with this decision.
ANALYSIS
We have repeatedly stated that the central purpose of statutory interpretation is deciphering and giving effect to legislative intent. State v. J.M., 824 So.2d 105, 109 (Fla.2002) (“It is well settled that legislative intent is the polestar that guides a court’s statutory construction analysis.”); Carlile v. Game & Fresh Water Fish Com’n, 354 So.2d 362, 364 (Fla.1977) (“In determining the meaning of a statute we must look to the intent of the Legislature in enacting that statute.”). That legislative intent is chiefly derived from the language of the statute itself. Tropical Coach Line, Inc. v. Carter, 121 So.2d 779, 782 (Fla.1960) (“If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended.”); Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000) (“When interpreting a statute and attempting to discern legislative intent, courts must first look at the actual language used in the statute.”).
When a statute’s language is plain and unambiguous, there can be no resort to statutory construction. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454-55 (Fla.1992) (citing numerous cases and concluding that “[t]he sum of these cases is that this Court is without power to construe an unambiguous statute”). This Court does not question the wisdom of a statute but instead applies the statute according to the Legislature’s direction. Finally, this Court will only override the plain language of a statute “when there are cogent reasons for believing that the letter [of the statute] does not accurately disclose the [legislative] intent.” State ex rel. Hanbury v. Tunnicliffe, 98 Fla. 731, 124 So. 279, 281 (1929).
Accordingly, we begin our analysis with the language of the statute. Section 627.727(6) (2004), subsections (a) and (b), Florida Statutes (2004), state:
(6)(a) If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of 30 days after receipt thereof to consider authorization of the settlement or retention of subrogation rights. If an under-insured motorist insurer authorizes settlement or fails to respond as required by paragraph (b) to the settlement request within the 30-day period, the in *214 jured party may proceed to execute a full release in favor of the underinsured motorist’s liability insurer and its insured and finalize the proposed settlement without prejudice to any underin-sured motorist claim.
(b) If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing permission to settle, the underinsured motorist insurer must, within 30 days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist’s liability insurer. Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.
(Emphasis added.)
When considering the meaning of terms used in a statute, this Court looks first to the terms’ ordinary definitions. Hanbury, 124 So. at 281 (“In the interpretation of statutes[,] words in common use are to be construed in their natural, plain, and. ordinary signification, unless it appears they were used in a technical or other sense.”). Those definitions may be derived from dictionaries. L.B. v. State, 700 So.2d 370, 372 (Fla.1997) (“[A] court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term.”).
The common meaning of the terms used in section 627.727(6) supports the result that the Fifth District reached. In the first portion of section 627.727(6)(b), the statute explains that to preserve its UM subrogation rights, the UM carrier must pay the injured party — its insured — the amount the tortfeasor offered the injured party as a settlement. The statute then states:
Thereafter, upon final resolution of the underinsured motorist claim, the under-insured motorist insurer is entitled to seek subrogation against the underin-sured motorist and the liability insurer for the amounts paid to the injured party-
§ 627.727(6)(b), Fla. Stat. (2004) (emphasis added).
The critical terms in the pertinent portion of section 627.727(6)(b) are “upon” and “entitled.” “Upon” commonly means “on,” “thereafter, thereon,” and “on.” Merriam-Webster’s Collegiate Dictionary (11th ed.2005) (“on;” “thereafter, thereon”); American Heritage Dictionary (4th ed.2000) (“on”). The use of the word “entitle” commonly means “to furnish with proper grounds for seeking or claiming something,” “[t]o furnish with a right or claim to something,” and “[t]o grant a legal right to or qualify for.” Merriam-Webster’s Collegiate Dictionary (11th ed.2005) (“to furnish with proper grounds for seeking or claiming something”); American Heritage Dictionary (4th ed.2000) (“[t]o furnish with a right or claim to something”); Black’s Law Dictionary (8th ed.2004) (“[t]o grant a legal right to or qualify for”).
Reading the statute in light of these definitions, the statute plainly explains that it is only thereafter or on (“upon”) the final resolution of the UM claim that the UM carrier has the right (“is entitled”) to pursue its subrogation claim. The statute emphasizes that the UM carrier is only “entitled” to bring any such subrogation claim “upon” a certain action occurring. That certain action is the “final resolution of the underinsured motorist claim.” Accordingly, the statutory language is plain in its requirement that the UM carrier is not entitled to bring a *215 subrogation claim until after the UM claim has reached “final resolution.”
This Court’s precedent on statutory-construction also supports the Fifth District’s interpretation of section 627.727(6). We have recognized that “the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.” State v. Goode, 830 So.2d 817, 824 (Fla.2002); see also Martinez v. State, 981 So.2d 449, 452 (Fla.2008) (repeating this quote). “[Wjords in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words.” State v. Bodden, 877 So.2d 680, 686 (Fla.2004). Reading section 627.727(6) as permissive ignores the emphasized language “[thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underin-sured motorist.” § 627.727(6)(b), Fla. Stat. (2004) (emphasis added). If the statute only stated “[thereafter, the underinsured motorist insurer is entitled to seek subro-gation” then it would seem clear that the timeframe in which the UM carrier could seek subrogation was more flexible and tied only to the UM insurer first paying its insured to preserve its subrogation rights. However, the language “upon final resolution of the underinsured motorist claim” must be given meaning, and the most logical meaning of that language is to read it as imposing a condition precedent to the UM carrier’s entitlement to bringing a subrogation claim. Accordingly, this canon of statutory construction supports the Fifth District’s interpretation, and we approve Metropolitan.
Finally, we conclude that in view of the legislative modification of the time when the UM insurer can bring a subrogation action, the statute of limitations for bringing the subrogation action must likewise be modified. Therefore, we expressly hold that the statute of limitations for the bringing of a UM subrogation action— which cannot be brought until “final resolution of the underinsured motorist claim” — begins to run from the time of the final resolution of the UM claim. We disapprove of the decision of the Second District in Dominion of Canada, which is in conflict with this holding as to the time that the statute of limitations begins to run.
CONCLUSION
Because the language of section 627.727(6)(b) plainly states that an UM carrier “is entitled to seek subrogation” only “upon final resolution of the underin-sured motorist claim,” we conclude that the statute is mandatory, as the Fifth District held in Metropolitan. This result is supported by the plain language of the statute and our precedent on statutory interpretation. We further note that because section 627.727(6) affects the substantive rights of UM carriers by limiting their ability to bring a subrogation action until final resolution of the UM claim, the statute of limitations for UM carrier sub-rogation claims under the statute does not begin to run until final resolution of the UM claim. Accordingly, we disapprove Dominion of Canada to the extent it conflicts with this decision, approve Metropolitan, and remand for further proceedings consistent with this decision.
It is so ordered.
QUINCE, C.J., PARIENTE and CANADY, JJ„ and ANSTEAD, Senior Justice, concur.
LEWIS, J., concurs in result only with an opinion.
POLSTON, J., concurs in part and dissents in part with an opinion.

[N.4] We recognize that our decision requiring a separate action does not promote judicial efficiency because, absent settlement, the trial court may well be required to have two trials. We also agree that our decision increases the likelihood of inconsistent judgments. However, where legislative language is clear and unambiguous, we are not free to disregard such language. See Macola v. Gov’t Employees Ins. Co., 953 So.2d 451, 457 (Fla.2006); Wagner v. Orange County, 960 So.2d 785, 789 (Fla. 5th DCA 2007).