# Supreme Court of Florida

_____

No. SC15-722
_____

**LYANTIE TOWNSEND, etc.,**
Petitioner,

vs.

**R.J. REYNOLDS TOBACCO COMPANY,**
Respondent.

[June 9, 2016]

LEWIS, J.

This case is before the Court for review of the decision of the First District

Court of Appeal in R.J. Reynolds Tobacco Co. v. Townsend, 160 So. 3d 570 (Fla.

1st DCA 2015). In its decision, the district court certified a question of great

public importance to this Court. See id. at 575. We have jurisdiction. See art. V,

§ 3(b)(4), Fla. Const.

## BACKGROUND

After lengthy and protracted litigation, this case is here for a determination

of whether R.J. Reynolds Tobacco Company ("R.J. Reynolds"), the Respondent,

owes Lyantie Townsend, the Petitioner, $768,205.48 in disputed post-judgment

interest. The dispute concerns whether the post-judgment interest rate was 6% or 4.75% for post-judgment interest accruing during the period after January 1, 2012, in light of an intervening statutory amendment to Florida's post-judgment interest statute, section 55.03, Florida Statutes. R.J. Reynolds has otherwise satisfied the judgment and paid the undisputed portion of the interest. The facts are not in dispute.

The relevant facts began on April 21, 2010, when a final judgment was entered awarding Townsend $5,508,000 in compensatory damages and $40,800,000 in punitive damages. With regard to post-judgment interest, the judgment provided that the total sum of $46,308,000 "shall bear interest at 6% per annum from April 29, 2010 for which sum let execution issue." In 2010, section 55.03(3), Florida Statutes, specifically provided that "[t]he interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid." § 55.03(3), Fla. Stat. (2010).

Next, in 2012, following an appeal by R.J. Reynolds and an election of remittitur by Townsend, an amended final judgment was entered awarding Townsend $5,508,000 in compensatory damages and $20,000,000 in punitive damages. The trial court ordered that the total sum of $25,508,000 would "bear interest as provided by law from April 29, 2010."

In 2014, R.J. Reynolds then filed a motion in the trial court to determine the rate of interest payable on the amended final judgment. R.J. Reynolds contended that a 2011 amendment to section 55.03(3), Florida Statutes, governed the accrual of interest on the judgment after the amended statute became effective on July 1, 2011. As we will detail below, the amendment to section 55.03(3) no longer provided that the interest rate would remain the same until the judgment was paid, but instead called for an interest rate subject to annual adjustment on January 1 of each year. After a hearing as to whether the amended statutory provision applied, the trial court denied R.J. Reynolds' motion.

On appeal from the trial court's ruling, a divided panel of the First District reversed the trial court for two reasons. See Townsend, 160 So. 3d at 573. First, the district court held that the 1998 addition of section 55.03(3), which remained in effect in 2010, did not abrogate the common law default rule. See id. at 575. Second, the district court held that the same version of the statute in effect at the time of the judgment did not create a vested right in one unchanging interest rate. See id. In dissent, however, Judge Swanson concluded that the plain meaning of the 2010 version of section 55.03(3), Florida Statutes, which was in effect at the time of the judgment, controlled. Id. at 576 (Swanson, J., dissenting in part and concurring in part). Judge Swanson rejected the notion that the common law default rule permitted the 2011 amendment to the statute to retroactively make the

substantive change from a fixed rate of interest to an adjustable rate of interest. Ultimately, the First District certified the question to this Court as one of great public importance:

> DOES THE LANGUAGE OF SECTION 55.03(3), FLORIDA STATUTES (1998), PROVIDE THAT THE LEGISLATURE INTENDED TO ABANDON THE COMMON LAW RULE THAT POST-JUDGMENT INTEREST RATES CHANGE ON EXISTING JUDGMENTS WHEN THE LEGISLATURE CHANGES THE RATES SUCH THAT THE 2011 AMENDMENTS TO SECTION 55.03, FLORIDA STATUTES DO NOT APPLY TO A JUDGMENT ENTERED PRIOR TO JULY 1, 2011?

Id. at 575. We accepted jurisdiction. See Townsend v. R.J. Reynolds Tobacco Co., 171 So. 3d 124 (Fla. 2015). However, we believe the question is better articulated as:

> DOES THE 2011 AMENDMENT TO SECTION 55.03(3), FLORIDA STATUTES, APPLY TO A JUDGMENT ENTERED BETWEEN OCTOBER 1998 AND JUNE 30, 2011?

This review follows.

## ANALYSIS

As the facts are not in dispute, this matter turns on a pure question of law and statutory interpretation—which version of section 55.03(3), Florida Statutes, governs and applies to the judgment in this case. Therefore, our review is de novo. See Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005).

Townsend contends that the 2010 version of section 55.03(3), which provided a fixed rate of interest in effect at the time a judgment is entered shall

remain the same until the judgment is satisfied, controls because she obtained her judgment in 2010. We agree. In our view, the 2010 version of the statute created a vested right in a fixed rate of interest until the judgment was satisfied, and therefore, application of the current version of the statute would unconstitutionally abridge this vested right. Therefore, we quash the decision below and answer the rephrased certified question in the negative.

THE TWO STATUTES AT ISSUE

We begin our analysis by reviewing the two versions of section 55.03 at issue. Prior to 1998, section 55.03 only had two subsections, neither of which stated whether the interest rate was fixed or annually adjusted.[1] In 1998, effective

---

1. In 1997, section 55.03 provided in full:

55.03 Judgments; rate of interest, generally.—

(1) On December 1 of each year beginning December 1, 1994, the Comptroller of the State of Florida shall set the rate of interest that shall be payable on judgments or decrees for the year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate. The Comptroller shall inform the clerk of the courts and chief judge for each judicial circuit of the rate that has been established for the upcoming year. The initial interest rate established by the Comptroller shall take effect on January 1, 1995, and the interest rate established by the Comptroller in subsequent years shall take effect on January 1 of each following year. Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate set by the Comptroller for time periods after January 1, 1995, for which interest is due. Nothing

- 5 -

October 1998, the Legislature amended section 55.03, including the addition of two subsections.  See Ch. 98-410, § 4, Laws of Fla.  One of the new subsections was subsection 55.03(3), providing that "The interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid."  See Ch. 98-410, § 4, Laws of Fla; § 55.03(3), Fla. Stat. (2008).  With the exception of changes to section 55.03(1) in 2003 to replace "Comptroller" with "Chief Financial Officer," the 2010 version of the statute reflects the 1998 statutory amendments.  As a result, in April 2010, the time when Townsend obtained her original judgment and the time from which the amended judgment accrues interest, section 55.03 provided in full:

> 55.03 Judgments; rate of interest, generally.—
>
> (1)  On December 1 of each year, the Chief Financial Officer shall set the rate of interest that shall be payable on judgments or decrees for the year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate. The Chief Financial Officer shall inform the clerk of the courts and

> contained herein shall affect a rate of interest established by written contract or obligation.
>
> (2)  Any process, writ, judgment, or decree which is directed to the sheriffs of the state to be dealt with as execution shall bear, on the face of the process, writ, judgment, or decree, the rate of interest which it shall accrue from the date of the judgment until payment.

§ 55.03, Fla. Stat. (1997).

chief judge for each judicial circuit of the rate that has been established for the upcoming year.  The interest rate established by the Chief Financial Officer shall take effect on January 1 of each following year.  Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate set by the Chief Financial Officer for time periods after January 1, 1995, for which interest is due.  Nothing contained herein shall affect a rate of interest established by written contract or obligation.

(2)  Any judgment for money damages or order for a judicial sale and any process or writ directed to a sheriff for execution shall bear, on its face, the rate of interest that is payable on the judgment. The rate of interest stated in the judgment accrues on the judgment until it is paid.

(3)  The interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid.

(4)  A sheriff shall not be required to docket and index or collect on any process, writ, judgment, or decree, described in subsection (2), and entered after the effective date of this act, unless such process, writ, judgment, or decree indicates the rate of interest. For purposes of this subsection, if the process, writ, judgment, or decree refers to the statutory rate of interest described in subsection (1), such reference shall be deemed to indicate the rate of interest.

§ 55.03, Fla. Stat. (2010) (emphasis added).

Next, effective July 1, 2011, an amended version of section 55.03 provided

in full:

55.03  Judgments; rate of interest, generally.—

(1)  On December 1, March 1, June 1, and September 1 of each year, the Chief Financial Officer shall set the rate of interest that shall be payable on judgments or decrees for the calendar quarter beginning January 1 and adjust the rate quarterly on April 1, July 1, and October 1 by averaging the discount rate of the Federal Reserve Bank of New

York for the preceding 12 months, then adding 400 basis points to the averaged federal discount rate. The Chief Financial Officer shall inform the clerk of the courts and chief judge for each judicial circuit of the rate that has been established for the upcoming quarter. The interest rate established by the Chief Financial Officer shall take effect on the first day of each following calendar quarter. Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate set by the Chief Financial Officer for time periods after January 1, 1995, for which interest is due. Nothing contained herein shall affect a rate of interest established by written contract or obligation.

(2) Any judgment for money damages or order for a judicial sale and any process or writ directed to a sheriff for execution shall bear, on its face, the rate of interest that is payable on the judgment. The rate of interest stated in the judgment, as adjusted in subsection (3), accrues on the judgment until it is paid.

(3) The interest rate is established at the time a judgment is obtained and such interest rate shall be adjusted annually on January 1 of each year in accordance with the interest rate in effect on that date as set by the Chief Financial Officer until the judgment is paid, except for judgments entered by the clerk of the court pursuant to ss. 55.141, 61.14, 938.29, and 938.30, which shall not be adjusted annually.

(4) A sheriff shall not be required to docket and index or collect on any process, writ, judgment, or decree, described in subsection (2), and entered after the effective date of this act, unless such process, writ, judgment, or decree indicates the rate of interest. For purposes of this subsection, if the process, writ, judgment, or decree refers to the statutory rate of interest described in subsection (1), such reference shall be deemed to indicate the rate of interest.

§ 55.03, Fla. Stat. (2011) (emphasis added); Ch. 2011–169, §§ 1, 3, Laws of Fla.

Thus, through the 2011 amendment to section 55.03(3), the Legislature changed

post-judgment interest in Florida from a fixed rate of interest at the time the

judgment was entered, which remained the same until paid, to one that would be adjusted annually to reflect the interest rate established by the Chief Financial Officer.

## VESTED RIGHTS AND DUE PROCESS

To answer the rephrased certified question, we must determine whether the 2010 version of section 55.03(3) created a vested right in a fixed interest rate for the life of the judgment. In <u>Maronda Homes, Inc. of Florida v. Lakeview Reserve Homeowners Ass'n, Inc.</u>, we explained the constitutional implications of vested rights under Florida law with regard to subsequent legislative enactments:

> Article I, section 2, of the Florida Constitution guarantees to all persons the right to acquire, possess, and protect property. Section 9 of article I provides that "[n]o person shall be deprived of life, liberty or property without due process of law." These constitutional due process rights protect individuals from the retroactive application of a substantive law that adversely affects or destroys a vested right; imposes or creates a new obligation or duty in connection with a previous transaction or consideration; or imposes new penalties. For the retroactive application of a law to be constitutionally permissible, the Legislature must express a clear intent that the law apply retroactively, and the law must be procedural or remedial in nature.

> Remedial statutes operate to further a remedy or confirm rights that already exist, and a procedural law provides the means and methods for the application and enforcement of existing duties and rights. In contrast, a substantive law prescribes legal duties and rights and, once those rights and duties are vested, due process prevents the Legislature from retroactively abolishing or curtailing them.

127 So. 3d 1258, 1272 (Fla. 2013) (internal citations omitted). Thus, if the 2010 version of section 55.03(3) created a vested right in a fixed interest rate for

judgments obtained while it was in effect, then we cannot constitutionally apply the 2011 amendment—which provides for an annually adjusted rate—to the judgment at issue in this case. It follows then that this inquiry turns on our application and interpretation of the 2010 version of section 55.03(3).

When this Court interprets statutes, we give effect to the Legislature's intent and are guided by rules of statutory interpretation. See Joshua v. City of Gainesville, 768 So. 2d 432, 435 (Fla. 2000). We begin this process by looking to the actual language used in the statute. See id. "Where the statute's language is clear or unambiguous, courts need not employ principles of statutory construction to determine and effectuate legislative intent." Trinidad v. Fla. Peninsula Ins. Co., 121 So. 3d 433, 439 (Fla. 2013) (citing Fla. Dep't of Children & Family Servs. v. P.E., 14 So. 3d 228, 234 (Fla. 2009)). Instead, when clear and unambiguous, "the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent." Daniels, 898 So. 2d at 64-65 (citing State v. Burris, 875 So. 2d 408, 410 (Fla. 2004)). Furthermore, when the Legislature has not defined a word, it is entirely appropriate to refer to a dictionary to ascertain the plain and ordinary meaning of the word. See, e.g., Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 190 (Fla. 2013) ("As this Court has held, '[w]hen considering the meaning of terms used in a statute, this Court looks first to the terms' ordinary definitions, . . . definitions

[that] may be derived from dictionaries.' " (quoting <u>Metro. Cas. Ins. Co. v. Tepper</u>, 2 So. 3d 209, 214 (Fla. 2009))).

We can recall few statutes that are as clear and unambiguous as the 2010 version of section 55.03(3): "The interest rate established at the time a judgment is obtained <u>shall remain the same until the judgment is paid</u>." § 55.03, Fla. Stat. (2010) (emphasis added). It is abundantly clear that the statute provides for an unchanging, fixed interest rate on a judgment entered at that time once that rate has been established by the specific terms of the statute. The dictionary defines the verb "remain" in this context as "to continue <u>unchanged</u>." Merriam-Webster's Collegiate Dictionary 988 (10th ed. 1998) (emphasis added). Likewise, the adjective "same" in this context is defined as "being one without addition, change, or discontinuance: <u>identical</u>." <u>Id.</u> at 1034 (emphasis added). Generally, the word "shall" is interpreted as mandatory in nature. <u>See</u> <u>S.R. v. State</u>, 346 So. 2d 1018, 1019 (Fla. 1977). Thus, once a judgment was obtained at the time that this statute was applicable, the rate of interest provided in the statute cannot change.

Although it is not necessary to delve into the legislative history of section 55.03(3), Florida Statutes (2010), because the language is clear and unambiguous, the legislative history nevertheless confirms our reading of the statute. A staff analysis of the enacting law for the 2010 version of section 55.03(3) explained that

the statute "freezes" the interest rate to avoid the burden of adjusting the interest rate on judgments year after year:

> B. EFFECT OF PROPOSED CHANGES:
>
> . . . .
>
> **4. Would Freeze the Applicable Rate of Interest** – CS/HB 935 states that "The interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid." This provision would reduce the administrative burdens faced by sheriffs, clerks of the circuit courts, and certain financial institutions. Currently, the rate of interest paid on judgments must be recalculated based upon annual adjustments by the comptroller.

Fla. H.R. Comm. on Civil Justice & Claims, HB 935 (1997) Staff Analysis (Mar. 28, 1997). This legislative history suggests that the Legislature aimed to reduce the work and costs that would ensue from adjusting countless judgments on a year-to-year basis by providing for an interest rate that would be the same until the judgment was paid.

As we have determined that the 2010 version of section 55.03(3) provides for an unchanging rate of interest for the life of a judgment, we now turn to whether the statute is procedural or substantive in nature. As we explained above, only a substantive statute can create a vested right. See Maronda Homes, 127 So. 3d at 1272.

We conclude that the 2010 version of section 55.03(3) is substantive in nature rather than procedural or remedial. As Judge Swanson noted in dissent

- 12 -

below, the value of Townsend's judgment would be reduced if the 2011 version of section 55.03 were to be retroactively applied. See Townsend, 160 So. 3d at 576 (Swanson, J. dissenting in part and concurring in part). Specifically, application of the 2011 statute would deprive Townsend of $768,000. Furthermore, the substantive nature of the 2010 version of section 55.03(3) serves to protect R.J. Reynolds' interests as well. Had the 2011 version applied and the Chief Financial Officer increased the interest rate, rather than reduced it, then R.J. Reynolds would have had to pay more on the judgment than it could have expected. Thus, the difference between application of the 2010 statute and application of the 2011 statute exemplifies a statute imposing a legal duty or obligation, which characterizes a substantive statute. See Maronda Homes, 127 So. 3d at 1272 ("[A] substantive law prescribes legal duties and rights . . . ."). Moreover, aside from the pecuniary impact of changing from a fixed rate of interest to a variable rate, the 2010 version of the statute allowed Townsend and R.J. Reynolds to count on the certainty of a fixed rate, alleviating each party of the separate burdens associated with recalculating the interest rate annually. The 2010 statute allowed both Townsend and R.J. Reynolds to plan accordingly and forecast what would be owed regardless of how long the judgment remained unsatisfied. Once the Legislature has granted that substantive certainty, it cannot remove it through a subsequent enactment without violating the Florida Constitution.

Next, we turn to whether Townsend's substantive right in a fixed rate of interest actually vested. We conclude that it vested at the moment she obtained her judgment.

We need not look any further than the plain language of the statute to reach this conclusion. As discussed above, the language is clear that the judgment bears a fixed interest rate—one that remains the same—once the rate is established at the time the judgment is obtained. See § 55.03(3), Fla. Stat. (2010). On April 29, 2010, Townsend met the sole condition of obtaining a judgment. Although the final judgment was amended in 2012, it was amended as a result of a remittitur and therefore relates back to the date the original judgment was obtained—April 29, 2010. See Smith v. Goodpasture, 189 So. 2d 265, 267 (Fla. 4th DCA 1966) (explaining that post-judgment interest on an amended judgment following a remittitur accrues from the date of the original entry of judgment, rather than the date of the amended judgment, because a remittitur does not result in a new judgment, but merely modifies the original judgment). Therefore, Townsend's substantive right to a fixed rate of post-judgment interest vested on April 29, 2010.

R.J. Reynolds relies on Scott v. Williams, 107 So. 3d 379 (Fla. 2013), to contend that Townsend's rights only vested with regard to the interest that accrued prior to the effective date of the 2011 amendment to section 55.03(3). R.J. Reynolds' theory is that there can be no vested right to interest that has not yet

accrued.  Thus, R.J. Reynolds relies on the fact that it is uncertain exactly how long a judgment debtor will wait before fully satisfying a judgment and, therefore, exactly how much interest will accrue.  We disagree.

R.J. Reynolds misapprehends the right at issue.  The substantive right created by the 2010 version of section 55.03(3) is simply the right to a fixed rate of interest for the life of the judgment, not the right to interest or to a particular rate of interest.  Thus, whether or not interest has yet accrued is irrelevant to this right.  It merely stands for the proposition that any and all interest will be calculated at the same rate.  The only relevant consideration is whether Townsend obtained a judgment while the statute was in effect.  As noted previously, she did.

Furthermore, Scott is entirely distinguishable.  Scott concerned the constitutionality of a statute that changed the Florida Retirement System from a noncontributory pension plan to a contributory pension plan and eliminated an annual cost of living adjustment.  See id. at 382.  The changes applied only to benefits corresponding to future service—work performed after the effective date of the statute.  See id.  In Scott, we held that the changes were constitutional despite a preservation of rights statute.  See id. at 388.  Unlike the beneficiaries in Scott whose future benefits depended on how much future work they performed, Townsend secured her right to a fixed rate of interest solely by obtaining a judgment.  Thus, unlike the workers in Scott, Townsend has completely fulfilled

- 15 -

her only obligation under the statute and can do no more.  <u>Scott</u> is also distinguishable on the basis that the preservation of rights statute concerned contractual rights, whereas the statute at issue here does not.  As a result, R.J. Reynolds' reliance on <u>Scott</u> is misplaced.

Having determined that Townsend's substantive right to a fixed rate of interest on her judgment vested, we cannot constitutionally apply the 2011 version of section 55.03(3) to her judgment.  To do so would offend Townsend's right to due process.  As a result, we answer the rephrased certified question in the negative.

ADDITIONAL CONCERNS

Although we need not reach further discussion, we briefly address two other concerns raised by the majority below and R.J. Reynolds.  First, R.J. Reynolds urges that the statute cannot create a vested right to a fixed rate of interest because it would bind the hands of future Legislatures.  The very passage of the 2011 amendment to section 55.03(3), however, belies this contention.  Through that enactment, the Legislature exercised its right to change the policy on post-judgment interest by transitioning from a fixed rate of interest to an annually adjusted rate of interest.  Any judgments obtained from the effective date of the 2011 amendments to section 55.03(3) are subject to the new statutory provisions of a variable interest rate established by the 2011 Legislature.  Indeed, the fact that

- 16 -

the statutory change does not retroactively reach those judgments obtained pursuant to the previous version of section 55.03(3) is in harmony with this State's long-standing aversion to retroactive legislation. See Bates v. State, 750 So. 2d 6, 9 (Fla. 1999) ("Retroactive application of the law is generally disfavored . . . .") (internal citations omitted). This concern is unfounded.

Second, the majority below held that the common law default rule cases control in this situation despite the plain language of 55.03(3). R.J. Reynolds urges us to approve that flawed reasoning. However, as discussed above, there was no need to look beyond the plain meaning of the statute. Under Florida law, a statute supersedes a common law rule when it is so repugnant to the common law rule that the two cannot coexist. See Thornber v. City of Ft. Walton Beach, 568 So. 2d 914, 918 (Fla. 1990). The 1998 enactment of section 55.03(3) presents such a scenario.

On the one hand, the common law default rule cases stand for the proposition that the post-judgment interest rate changes on judgments as the Legislature changes the rates in the statutes. See Morley v. Lake Shore & M.S. Ry. Co., 146 U.S. 162 (1892); Glades Cty., Fla. v. Kurtz, 101 F.2d 759, 760 (5th Cir. 1939); Applestein v. Simons, 586 So. 2d 441, 442 (Fla. 3d DCA 1991). The common law default rule rejects the notion that statutory interest is of a contractual nature. See generally Morley, 146 U.S. 162; Glades Cty., Fla., 101 F.2d 759; Applestein, 586 So. 2d 441. Instead, as remains true today, statutory post-

- 17 -

judgment interest is a matter of legislative grace.  See <u>Whitehurst v. Camp</u>, 677 So. 2d 1361, 1362 (Fla. 1st DCA 1996).  The common law default rule cases thus interpreted changes in the post-judgment statutory interest rate as permissible exercises of this legislative grace and changing legislative policies.

On the other hand, as discussed above, in 1998, the Legislature enacted section 55.03(3), which provided that "[t]he interest rate established at the time a judgment is obtained shall remain the same until the judgment is paid."  § 55.03(3), Fla. Stat. (1998).  This provision squarely rejected the common law default rule's position to the contrary.  The subsequent 2011 amendments, returning to a variable rate of interest, further bolster our conclusion that the 1998 addition of section 55.03(3) superseded the common law default rule with precise statutory language.

Despite the clear conflict between the 1998 version of section 55.03(3) and the common law default rule, R.J. Reynolds nevertheless attempts to reconcile the two.  Specifically, R.J. Reynolds urges us to read section 55.03(3) as also including some type of implicit language not present in the statute that the rate shall remain the same "unless and until—as here—the Legislature decided otherwise." However, this we cannot do.  See <u>Hayes v. State</u>, 750 So. 2d 1, 4 (Fla. 1999) ("We are not at liberty to add words to statutes that were not placed there by the Legislature.").  Moreover, even if we could, such an interpretation is incorrect.  To simply ignore the fact that the Legislature explicitly provided for a singular,

unchanging rate of interest would be to consider the language of 55.03(3)

superfluous or meaningless and run contrary to years of precedent.  See Tepper, 2

So. 3d at 215 ("[W]ords in a statute are not to be construed as superfluous if a

reasonable construction exists that gives effect to all words.") (quoting State v.

Bodden, 877 So. 2d 680, 686 (Fla. 2004)).

Furthermore, the common law default rule cases involve a distinguishable

post-judgment interest rate statutory framework.  Not a single decision of the

common law default rule cases from other jurisdictions concerns or involves a

statute like the one in effect in Florida at the time Townsend obtained the judgment

we consider here.[2]  Specifically, the statute here contains a specific provision

---

2.  In a misplaced attempt to sway this Court in terms of majority and minority rules, R.J. Reynolds refers this Court to many cases from other jurisdictions applying the common law default rule to statutes which appear to be silent with regard to whether the interest rate on a judgment is fixed for the life of the judgment.  See, e.g., Morley, 146 U.S. at 162 (applying New York law); Brown v. David K. Richards & Co., 978 P.2d 470, 478 (Utah Ct. App. 1999); Se. Freight Lines v. Michelin Tire Corp., 303 S.E.2d 860, 861-62 (S.C. 1983); Mayor & City Council of Balt. v. Kelso Corp., 449 A.2d 406, 410 (Md. Ct. App. 1982); Shook  & Fletcher Insulation Co. v. Cent. Rigging  & Contracting Corp., 684 F.2d 1383, 1388-89 (11th Cir. 1982) (applying Georgia law); Associated Developers, Inc. v. City of Brookings, 305 N.W.2d 848, 849 (S.D. 1981); Ind. Dep't of Revenue v. Glendale-Glenbrook Assocs., 429 N.E.2d 217, 220 (Ind. 1981); McBride v. Super. Ct., 635 P.2d 178, 179 (Ariz. 1981); Senn v. Commerce-Manchester Bank, 603 S.W.2d 551, 553-54 (Mo. 1980); Ridge v. Ridge, 572 S.W.2d 859, 860-61 (Ky. 1978); Noe v. City of Chicago, 307 N.E.2d 376, 394 (Ill. 1974); Swanson v. Flynn, 31 N.W.2d 320, 323 (N.D. 1948); Idaho Gold Dredging Corp. v. Boise Payette Lumber Co., 37 P.2d 407, 412 (Idaho 1934); Stanford v. Coram, 72 P. 655, 655-56

providing the rate of interest that accrues until the judgment is paid, section

55.03(2), Fla. Stat. (2010), and an additional provision explicitly providing that the

rate of interest shall remain the same until the judgment is paid, section 55.03(3),

Fla. Stat. (2010).[3]

Therefore, the common law default rule was rendered inapposite and

abrogated under Florida law following the enactment of section 55.03(3) in 1998.

R.J. Reynolds warns us that we should not simply disregard the century of cases

applying the common law default rule. However, we humbly reject the notion that

we have such power and hold today, instead, that the 1998 Legislature invoked that

power.

---

(Mont. 1903); Read v. Mississippi Cty., 63 S.W. 807 (Ark. 1901); Wyo. Nat'l
Bank of Laramie v. Brown, 53 P. 291 (Wyo. 1898).

3. Although R.J. Reynolds refers this Court to cases applying the common
law default rule in Arizona, North Dakota, and Utah, R.J. Reynolds failed to refer
this Court to subsequent enactments in those states that provide for an unchanging
rate of interest similar to the 2010 version of section 55.03(3), Florida Statutes.
See, e.g., § 44-1201(B), Ariz. Rev. Stat. Ann. (2011) ("The judgment shall state
the applicable interest rate and it shall not change after it is entered."); § 28-20-34,
N.D. Cent. Code Ann. (2005) ("Except as otherwise provided in this section,
interest on all judgments entered in the courts of this state before January 1, 2006,
must remain at the rate per annum which was legally prescribed at the time the
judgments were entered . . . ."); § 15-1-4(3)(c), Utah Code Ann. (1999) ("The
postjudgment interest rate in effect at the time of the judgment shall remain the
interest rate for the duration of the judgment."). While the Utah appellate decision
Brown, 978 P.2d 470, was issued in 1999 after section 15-1-4(3)(c) was enacted,
the Utah court was construing the 1992 Utah Code.

- 20 -

**CONCLUSION**

In conclusion, through its enactment of section 55.03(3) in 1998, the Legislature granted litigants obtaining a judgment a vested right to a fixed rate of interest that expressly fixed the rate of interest until the judgment was paid. As a result, subsequent enactments, including the 2011 amendments to section 55.03, cannot divest judgment holders of the right to a fixed rate of interest without offending due process, so long as those judgments were obtained while the 1998 version of section 55.03(3) was in effect. Thus, for the foregoing reasons, we quash the decision below, answer the rephrased certified question in the negative, and remand for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

I would approve the decision of the First District Court of Appeal in R.J. Reynolds Tobacco Co. v. Townsend, 160 So. 3d 570 (Fla. 1st DCA 2015), for the reasons Judge Roberts explained in his opinion.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D14-4147

(Alachua County)

Tracy Sue Carlin, Steven L. Brannock, and Celene Harrell Humphries of Brannock & Humphries, Tampa, Florida; Gregory David Prysock and Katherine Michelle Massa of Morgan & Morgan, P.A., Jacksonville, Florida; and Keith Randolph Mitnik of Morgan & Morgan, P.A., Orlando, Florida,

for Petitioner

Charles Franklin Beall, Jr. and Thomas Larry Hill of Moore, Hill & Westmoreland, P.A., Pensacola, Florida; and Gregory George Katsas and Charles Richard Allan Morse of Jones Day, Washington, District of Columbia,

for Respondent

Courtney Rebecca Brewer and John Stewart Mills of The Mills Firm, P.A., Tallahassee, Florida,

for Amicus Curiae Florida Justice Association